TOM TOLBERT ET AL. *v.* THE STATE.

1. HOMICIDE.   *Escaped felon.   Resisting arrest.   Self-defense.*

Where an escaped convict, armed, as was his habit, to resist arrest, and his brother, also armed and with him as an ally to prevent the arrest, encountered persons whom they had reason to believe were in pursuit to arrest such convict, immediately prepared to use their arms, and shortly began firing, numerous shots being exchanged, one of the arresting posse being killed by the convict or his brother, both are guilty of murder, though the evidence does not make it certain that they began the firing, and though the posse, being partially concealed, and, being called upon to say who they were, refused to make any response, and did not declare their purpose to arrest.

2. SAME.   *Overt act.   Resisting arrest.   Beginning difficulty.*

An escaped convict has no right to bear arms to defy civil authority to
prevent arrest.   Under the circumstances stated, the very presence of
the defendants, armed and ready to resist the arrest, was an overt act
apparently threatening, and justifying killing them on the slightest in-
dication of a purpose to use their weapons.   Therefore, it is not impor-
tant who fired the first shot.

3. JUROR.   *Competency.   Verdict.   Irregularity.   Const. 1890, § 264.*

Under § 264, constitution 1890, providing certain qualifications for jurors,
but directing that the want thereof shall not vitiate any verdict, it is not
cause for reversing a conviction of murder, that it was discovered, after
verdict, that one of the jurors was not a qualified elector, and had not
been drawn on the venire, but had been summoned by mistake in place
of a person of the same name who was drawn.   Complaint can be made
only where that occurs which impugns the fairness of the trial.

FROM the circuit court of Noxubee county, on a change of
venue from Kemper county.

HON. S. H. TERRAL, Judge.

In addition to the facts mentioned in the opinion, it is
deemed material to state that the defendants, Tom and Wal-
ter Tolbert, testified that, at the time of the killing of Cole,
they were going from their father's house to the blacksmith-
shop, where their brother, sixteen years of age, had been
killed, and, as they thought, murdered, by Donald the day
before, and that their object was to confer with the Indian,
the proprietor of the shop, to ascertain what his testimony
as to the killing would be; that Tom had determined to re-
turn to the penitentiary, and surrender himself, and that it
was desired to have the Indian state what he knew of the
killing in the presence of both; that, as they were going along
the path through the woods, when their dogs barked, they
discovered persons in front of them, and saw one of them
jump behind a tree; that there was not light enough for
them to see distinctly, and they did not know who it was;
that they inquired several times, "Who is there?" and that
no response was made, but that one of the persons fired at
them from behind a tree, whereupon they shot back, and

the firing became general; that they had no intimation that the persons they were thus encountering were acting with the sheriff or were seeking to arrest Tom, and that they shot in self-defense, believing their lives were in danger.

Harbour, who was with Cummings and Cole, testified that soon after the defendants were seen coming along the path, one of them said: "There is somebody, damn him; shoot him!" and that Tom Tolbert pulled his pistol from his breast, and directed it at him, the witness; that, as soon as he could, after seeing that they were shooting, he commenced firing; that no response was made when the defendants demanded to know who was there, and that they did not inform the defendants of the purpose to make the arrest.

Cummings testified that when he first saw the defendants they were coming down the path side by side, as if looking for some one; that they approached within thirty or thirty-five yards, and halted, as though they had seen him and his companions; that they "held out their guns as though they were going to fire, and I popped a cap [in an effort to shoot at defendants]. That was the first thing that was done after they called out 'Who is there?' Then the firing commenced. I could not say who fired the first shot. I could not tell whether our boys fired when they did or not. I was watching them. Just as I popped a cap, their guns flashed. . . . They hollered out 'Who is there?' and that was all that was said. I do not know why we did not tell them who we were, only it looked like they were going to shoot, and I felt like I did not have any time to do any talking."

The parties seeking to make the arrest had no warrant, and it was not claimed that they made any response to the inquiries of defendants, or said any thing whatever, before the firing began. Cummings and Harbour were the only witnesses to the killing besides the defendants.

Among others, the following instructions were given for the state:

"1. If the jury believe from the evidence that Tom and

Walter Tolbert opened fire with their guns and pistols upon Cole, Harbour and Cummings before either Harbour, Cole or Cummings made any hostile demonstrations toward the Tolberts, and that they continued to fire upon them until Cole was killed, then this is murder, and the jury should so find.

"2. Even though the jury may believe that Harbour snapped a cap at the Tolberts before they fired their guns upon Cole, Harbour and Cummings, he had a right so to do, if they believe that, from the acts, conduct and demonstrations of the Tolberts, or either of them, they were then about to inflict upon either Cole, Harbour or Cummings great personal injury or death.

"3. If the jury believe from the evidence that it was the purpose of Cole, Harbour and Cummings to arrest Tom Tolbert, an escaped convict, then they had a right to use every precaution necessary to make such arrest, and had a right to seat themselves on the path leading from Tolbert's house; and if they further believe that, before an opportunity was given them to announce their purpose, and before any hostile demonstrations were made by Cole, Harbour and Cummings, Tom and Walter Tolbert opened fire on them, or made such demonstrations as to indicate that it was their purpose to immediately open fire on them, then Cole, Harbour and Cummings had a right to shoot Tolbert.

"4. The jury have a right to determine, from all the facts and circumstances in evidence in this case, whether the Tolberts opened fire, or attempted to open fire, upon Harbour, Cole and Cummings (if they believe such is the fact) to prevent the recapture of Tom Tolbert, or in their necessary self-defense; and if they believe that the Tolberts opened fire upon Cole, Harbour and Cummings to prevent the recapture of Tolbert, and continued to fire until Cole was killed by one or either of them, then they are both guilty of murder, and the jury should so find.

"5. If the jury believe from the evidence that the defend-

ants, by any hostile demonstrations, and not superinduced by any deadly demonstration on the part of Cummings, Cole and Harbour indicating to Cole, Harbour and Cummings that they were about to inflict great personal injury or death upon them, induced Cole, Harbour and Cummings to fire upon them, then the defendants so commencing such deadly conflict, and so inviting Cole, Cummings and Harbour to a deadly conflict, would be guilty of murder if death ensued in such conflict.

"6. If the jury believe from the evidence that it was the purpose of Cole, Harbour and Cummins to arrest Tom Tolbert, then, if they thought it necessary as a precautionary measure, they had the right to place themselves behind the trees on the path they were guarding, after seeing the Tolberts approaching them with arms."

Among others, the following charges were given for the defendants:

"1. The court instructs the jury for the defendants that, notwithstanding they may believe from the evidence that Tom Tolbert had been convicted of a felony in the circuit court of Kemper county, sentenced to penitentiary for life, and made his escape therefrom, and at the time of the killing of Cole would have avoided arrest, if an attempt to arrest him had been made, yet all these facts could not and did not deprive him of the right of self-defense; and, although the jury may believe from the evidence that Cole, Harbour and Cummings had been directed to assist in the arrest of Tom Tolbert, and at the time of the killing or shooting of Cole, were there for the purpose of making such arrest, yet it was their duty, in good faith and with reasonable prudence and caution, to have made his arrest without a resort to severe means until all other proper means had failed, and under no circumstances to have resorted to shooting or an attempt to shoot him down, unless the arrest could not have been made without it; and if the jury believe from the evidence that Cole, Harbour and Cummings were lying in wait

or ambush upon the side of a path that the defendants were going, and when, at a distance of forty yards or more, they discovered the defendants approaching them, and then, at that distance, without making themselves known to the defendants, or the fact that they were there for the purpose of arresting them, and, without calling on them to halt or surrender, one of their number attempted to shoot them, or either of them, and, in that attempt, burst a cap, then the defendants had the right to act in self-defense as much so as if Tom Tolbert had not been guilty of any felony; and if, from all the facts and circumstances in evidence, the jury believe that, at the time Cole was shot, the defendants had reasonable ground to apprehend that their lives were in peril, and there was imminent danger of being killed or wounded by the said Cole, Harbour or Cummings, then they had the right to shoot in self-defense, and the killing of Cole under such circumstances was not murder, but was justifiable homicide, and the jury should return a verdict of not guilty.

"2. The court instructs the jury that the law holds the life of even a convict sacred, and does not justify any one in wantonly or recklessly and without sufficient cause taking it; that whilst any citizen may aid in the arrest of an escaped convict from the penitentiary, even without warrant, yet it is not their privilege or duty to shoot him down without warning or notice, or first making a reasonable effort to effect his arrest without resorting to such harsh means; and if the jury believe from the evidence that Cole, Harbour and Cummings, acting together, on or about the morning of the fourth day of November, 1892, without calling upon the defendants to halt or surrender, fired upon them from ambush, when the defendants were making no attempt to fire at or hurt them, then the defendants had the right, under the law of self-defense, to return the fire, and if, in so doing, Cole was killed by either of them, such killing was justifiable."

"5. The court instructs the jury that if, from all the evidence in this case, they believe or entertain a reasonable

doubt that at the time the defendants shot Cole they had reasonable ground to believe that Cole, Harbour and Cummings were about to kill them, or either of them, or do them, or either of them, great bodily harm, and at that time there was imminent danger that the defendants, or one of them, would be killed by the said Cole, Harbour or Cummings, then the defendants had the right to defend themselves, and to shoot Cole to defend their own lives."

"11. The court instructs the jury that it was incumbent on Cummings, Cole and Harbour, if they intended to arrest Tom Tolbert as an escaped penitentiary convict, to have notified him of such purpose, and, no such notification having been given by them to Tolbert, they cannot shield themselves by such undisclosed purpose from any reasonable suppositions of said Tolberts of their purpose to kill them or do them great bodily harm, naturally arising from the acts and conduct of said Cummings, Cole and Harbour; and if the jury believe from the evidence that the Tolberts had reasonable ground to believe, and did believe, from the overt acts and conduct of said Cummings, Cole and Harbour, that they, the said Tolberts, or either of them, stood in immediate danger of death or of great bodily harm from said Cummings, Cole and Harbour, and that said Tolberts fired upon said Cummings, Cole and Harbour in consequence of such danger to themselves, then the jury should acquit the defendants."

Both defendants were convicted, the punishment being fixed at imprisonment for life. Motion for new trial overruled; hence this appeal.

In support of one of the grounds of the motion for a new trial, it was shown that, after the verdict, it was discovered that one of the jurors, J. M. Archer, had been summoned by mistake; that his name was not in the jury-box and was not drawn in making up the special venire, but that he was summoned in place of another person of the same name who was drawn; that the person who was summoned, and who served on the jury, was a citizen of Alabama at the time the

names were placed in the jury-box; that he had moved into the state since, and that he was not a qualified elector at the time of trial.

The opinion contains such further statement of the case as is necessary to understand the questions decided by the court.

*J. R. McIntosh,* for appellants.

1. The jury found contrary to the law and evidence. It is manifest that the defendants acted in self-defense. Their young brother had been killed by Donald on the day before, and they were going to the blacksmith shop to interview the Indian, who was present at the killing, to ascertain what he knew about the facts. The arresting parties were in ambush, waiting for the defendants, and knew who they were, while the defendants were not expecting to meet them, and did not know who they were. They saw the defendants some distance off, and yet failed to make themselves or their purpose known, and even refused to respond to the reasonable inquiries that were made. The defendants saw one of the parties stealthily hiding behind a tree, and, under these circumstances, encountering unknown persons by the side of a trail in the woods, it was most natural that they should anticipate danger, and prepare to defend themselves. They acted reasonably and prudently. The only response made to their repeated inquiries was when a cap was burst by one of the parties, who was attempting to shoot from behind a tree. The undisputed testimony is, that the defendants were not informed of the purpose to make an arrest, and, further, that these concealed parties persistently refused to make any response whatever to their inquiries.

I submit that, according to the opinion of this court in the case of *State* v. *Jackson,* 66 Miss., 89, if Harbour's gun had fired when the cap burst, and he had killed one of the defendants, he would have been guilty of murder. In that case, this court said that an officer who killed one for whom

he has a warrant for felony must satisfy the jury that he tried, in good faith and with reasonable prudence and caution, to make the arrest, and that he resorted to the severer means employed when other proper means had failed. It cannot be contended that the so-called officers brought themselves within this rule. The testimony shows not only that the state witnesses made the first hostile demonstration, but that they were the first to open fire. But, in order to justify the shooting by defendants, it is not necessary to establish that the other parties shot first. Defendants saw that their lives were in imminent peril, and they had the right to shoot in self-defense.

2. I earnestly submit that there was not a word in the testimony to justify the verdict of guilty against Walter Tolbert. The undisputed testimony shows that he was going on a legitimate errand. He explained why he was armed; that he did not know but what he might meet up with Donald, who, he had been informed, had murdered his brother the day before. There was no necessity for him to be with Tom to aid him in making his escape. He did nothing but what any one else would have done under like circumstances.

3. Where it turns out, after verdict, that one of the jurors was incompetent, and this was unknown to defendant at the time, and could not with due diligence have been known to him, this is a ground for a new trial. Wharton on Cr. Pro., § 846 ; *McGill* v. *State*, 34 Ohio, 228 ; 7 Wend. (N. Y.), 714 ; 8 Ad. & E., 821.

*Frank Johnston*, attorney-general, for the state.

1. The evidence shows that a large number of citizens, acting under instructions from the sheriff, were engaged in what was evidently regarded as the dangerous business of arresting Tom Tolbert, an escaped convict and felon. Dispositions for the arrest had been made in the immediate locality the day before. The defendants knew that the officers of the law were after Tom Tolbert, who went habitually

armed. On the morning of the killing, both the defendants were armed, and ready for resistance. A formal declaration of war was not necessary, for the belligerents had actually taken the field. Tolbert knew as well as if the sheriff had notified him by mail, that the forces were after him, and he and his brother were prepared to shoot any man who stood in their path. The moment they saw the arresting parties who were guarding the path, they understood perfectly why they were there, and promptly opened fire. It is of no importance whether Harbour, seeing the hostile demonstration by the defendants of raising their guns, burst the cap an instant before they fired, or whether the defendants fired first. There cannot be a doubt that the homicide is murder.

2. The defendants having failed to make any inquiry into the competency of Archer, it is too late, after verdict, to object. *State* v. *Williams*, 37 Miss., 407 ; 39 *Ib.*, 570, 705. That the juror was not in fact drawn on the venire, could have been ascertained by questioning him, but counsel did not examine him at all. It is not shown that the juror answered any question falsely, and he was entirely impartial.

(Counsel on both sides also discussed at length the instructions and other questions, but, as these matters are not specially passed upon by the court, the argument is omitted.)

CAMPBELL, C. J., delivered the opinion of the court.

There were some immaterial errors committed by the court in its rulings on the admission of testimony, but they could not prejudice the cause of the defendants, and hence are not cause for reversal. The decisive question is as to the occurrences in connection with the killing of Cole, for which the defendants are on trial. The indisputable facts are that Tom Tolbert had been sentenced to the penitentiary for life, and, after being put in, had escaped and returned to his father's house in Kemper county, and was in the habit of going where he chose and meeting people of his acquaintance, and was usually, if not always, armed, and often with

both pistol and repeating rifle, and no effort was made to arrest him, although many months elapsed during which he enjoyed his liberty. He was sometimes attended by a brother, armed. The day before the killing of Cole, he and his brother John were at an Indian's blacksmith shop, and both were armed, when Mr. Donald encountered them, and shot and killed John, who had a repeating rifle, and shot at Tom, who shot at Donald. Just then the community was aroused, and the sheriff was sent for, and came into the vicinity. On his suggestion, several citizens, assembled to render him assistance to arrest Tom Tolbert, went at early dawn of the next morning after John was killed, and placed themselves on two paths leading through woods away from the home of Tom's father, where he was supposed to be, two men being on one path and three on another. Soon the two Tolberts—Tom and John—came along the trail on which, Cole, Cummings and Harbour were watching, and the dog of the Tolberts barked at the men, when Tom and Walter, both armed—Walter with the repeating rifle and Tom with only a pistol, he says—immediately commenced firing, as the state's witnesses say, and made ready, and demanded to know "Who's there?" as the Tolberts say; and in the firing Cole was killed by a shot of one of the Tolberts. There was much shooting, and probably ten or twelve discharges of fire-arms. The testimony conflicts as to which party shot first, and as to the precise order of the exciting occasion; but it distinctly appears that the Tolberts were both well armed, and that, when the dog barked, shooting commenced very soon. It is a just inference that the Tolberts were on the alert, and had their weapons ready for instant use. It is true that no announcement was made to Tom by his would-be captors that they had come for him and wanted him, but it is reasonably certain that he had just ground to believe that he was the object of pursuit that morning, and when he called to learn who was there, he was ready to open fire; and, whether he or Walter shot first, or the other parties did,

is not very material, for it is not to be tolerated that an escaped felon, arrayed against organized society, defying civil authority, with arms in his hands to resist arrest, and with an armed ally in the person of another, shall be treated with the consideration due to citizens generally. It may not be allowable for any one finding him to shoot him down on sight; he may not be, as Cain complained he was, liable to be slain by any one finding him, but, in his attitude, neither an officer nor citizen arresting him was bound to take any risk of being shot first. The very presence of Tolbert with arms and an armed attendant, was an overt act, apparently threatening towards any seeking to arrest him, justifying killing him on the very slightest indication of a purpose to use his deadly weapons to prevent arrest. A citizen may bear arms for his defense against unwarranted attack. An escaped penitentiary convict has not the right to bear arms for the unlawful purpose of defying civil authority and preventing arrest; and, as all have legal authority to arrest him, his demonstration of purpose to use deadly weapons against captors justifies his being killed.

These observations apply to Tom, and, as Walter was with him on this occasion, armed, and afterwards fled with him, and was with him in his final surrender, still keeping his trusty rifle, and thus showing himself an ally of Tom, and warranting the belief that he was with him on the morning Cole was killed, to make common cause with him in resisting arrest, much as sympathy for Walter may be indulged for obeying his fraternal instinct and adhering to Tom, and sad as it is that a youth of nineteen years of age should be thus involved in crime and punishment as the consequence of espousing the cause of his older brother, we are not able to say that any distinction as to guilt can be drawn between Tom and Walter, while a great difference might be justly made as to the punishment of the two.

We think the verdict right upon the testimony, while we are far from being satisfied that the Tolberts fired first in the

melee in which Cole was killed. If they did not, as they were exhibiting deadly weapons, under the circumstances, the other parties were not required to wait, and had the right to shoot and kill them.

The mistake as to the juror, Archer, whereby one not competent and not drawn, but summoned by mistake, as he had the same name, attended, and was accepted and served, is not ground for setting aside the verdict. Const. 1890, § 264. It is only where that occurs which impugns the fairness of the trial that a ground is presented for a new trial. While it is not surprising that the mistake as to the juror, Archer, was not discovered, under the peculiar circumstances so well calculated to mislead, it cannot be affirmed that it might not have been discovered by diligence before the jury was impaneled. The Archer drawn was an elderly man, fifty-eight years of age and a well-known citizen. The Archer summoned and who served, was a young man, and recently had moved into the county from another state; and it would seem that inquiry as to the Archer drawn, extending beyond his mere name, would have at once suggested that the young stranger who answered to the name when called was not the one drawn and inquired about; and on this ground the mistake was not cause for setting aside the verdict.

The right of a defendant is to have an impartial jury rather than one composed of particular persons; and where this right has been enjoyed, there is little cause for complaint, ordinarily, after verdict. An acquittal by such a jury would avail the defendant; and, having had a chance of escape at the hands of the jury, he should not be allowed to profit by an innocent mistake or inadvertence which, in fact, did him no harm.

The effort to show relationship between one of the jurors and Cole, who was killed, was a failure, which is all that need be said of that ground of complaint against the verdict.

We find in the record no ground for disturbing the conviction of both defendants, and the judgment is therefore

*Affirmed.*