NEW ORLEANS & NORTHEASTERN R. Co. *v.* LEWIS.

April 28, 1952.

No. 38384 (58 So. (2d) 486)

164

Cameron & Cameron, for appellant.

Easterling and Easterling, for appellee.

**Kyle, J.**

Willie Lewis recovered a judgment in the Circuit Court of the First Judicial District of Jones County against the New Orleans and Northeastern Railroad Company for damages for personal injuries alleged to have been sustained by him as a result of a collision between the defendant's train and the plaintiff's automobile at a public railroad crossing in the Town of Ellisville, and from that judgment the defendant prosecutes this appeal.

The negligence charged against the railroad company in the plaintiff's declaration was that the defendant's servants operating the train failed to sound any warning

of the train's approach to the railroad crossing; that the defendant had negligently and carelessly constructed its railroad tracks over and across the street on which the plaintiff was driving his automobile, in that the level of the defendant's main line track was several inches higher than the level of the defendant's side track and spur track at the street crossing, and that the defendant had completely obstructed the plaintiff's view of the approaching train by parking camp cars immediately south of the street crossing without leaving a sufficient opening to enable the plaintiff to see the approaching train, and that no warning signals were given and no flagman stationed at the street crossing to give warning of the approaching train.

The accident occurred about 10:00 o'clock on Saturday morning, April 7, 1951, at a point where a public street running eastwardly from U. S. Highway No. 11 crosses the appellant's railroad tracks in the Town of Ellisville. There were three railroad tracks at the crossing, the main line track, a spur track on the west side of the main line track, and a side track east of the main line track. The spur track on the west side was 9.7 feet from the main line track, and the side track on the east was 9.67 feet from the main line track. The spur track, by actual measurement, was 3⅛ inches lower than the main line track, and the side track was 4¾ inches lower than the main line track, and the side track on the east side was of asphalt construction. Several witnesses testified that the crossing was rough; and the assistant city engineer of the City of Laurel, who testified as a witness for the appellant, stated that "it isn't a smooth crossing."

The plaintiff testified that he had left Lonnie Knight's Filling Station, which was situated on U. S. Highway No. 11, and was driving eastwardly in a 1935 model Chevrolet automobile across the railroad tracks when the accident occurred. He stated that when he came to the railroad stop sign at the west edge of the railroad right

of way, he stopped his automobile and looked to see whether a train was approaching; that he saw no train and heard no train, and that no bell was ringing and no whistle was being sounded; that his view southwardly, however, was almost completely obstructed by several camp cars or box cars which were parked on the spur track south of the crossing and within eight feet of the crossing. The plaintiff then proceeded across the railroad tracks driving his 1935 model Chevrolet in second gear, and was hit by the oncoming north-bound train before he was able to clear the main line track. The plaintiff denied that he stopped the automobile on the track, and stated that the automobile was moving when the train hit it.

Cook Lewis testified that he operated the Gulf Service Station which was located near the railroad crossing where the accident occurred. He had just driven across the tracks from the east and turned into his service station as the plaintiff approached the crossing, and he had just parked his automobile at his wash rack when he heard the train hit the plaintiff's automobile. He testified that the train whistle was not blowing and the bell was not ringing when he crossed the railroad track just prior to the accident. He testified that camp cars were parked on the west spur track on both sides of the crossing, so that "just barely two cars could get through there." He testified that the driver of an automobile approaching the crossing from the west could not have seen a train coming from the south.

John William Easterling testified that he went to the scene of the accident about two hours after the accident occured and saw that the railroad cars were parked on the spur track "right up to the street." R. T. Hood testified that he was at the scene of the accident a few minutes after it happened; that he approached the crossing from the west and saw a lot of box cars to the right of the crossing, and that when he drove upon the west track he could not see down the railroad track to the

right until he got on the main line because of the parked box cars. He stated that he was not close enough to the crossing when the accident occurred to know whether the train whistle was sounded or the bell rung or not. Lonnie Knight testified that he operated a gasoline service station on Highway No. 11; that he went over to the railroad crossing after the accident had occurred; that he noticed the camp cars parked on the west side track and a pile of wood on the bank near the cars. He stated that there were four, five or six cars on the side track, and the first car next to the crossing was parked six or eight feet from the street itself. He stated that the driver of an automobile approaching the track from the west would have had to drive up on the main line track before he could see down the track, because of the way in which the box cars were parked on the side track.

Monroe Hughes, the engineer, testified that on the morning when the accident occurred he was approaching the crossing with the bell ringing and the whistle blowing; that when he reached a point about 200 feet from the crossing he saw the plaintiff drive his automobile on the crossing; that the automobile came to a dead stop on the crossing when the engine of the train was about 120 or 125 feet from the crossing; that he immediately applied his brakes, but could not stop the train in time to avoid hitting the automobile. The engineer testified that he was running about 20 or 25 miles per hour; that the bell had been ringing for about a quarter of a mile, and that he was keeping a lookout and was blowing the whistle for the crossing. When he saw that the automobile had come to a stop on the track he had to turn the whistle aloose until he could apply the brakes. He estimated that five or six seconds elapsed between the time that the automobile stopped on the crossing and the time that the engine struck the automobile. He testified that the brakes on his train were the best that could be had. He testified that he knew that the camp

cars were parked on the spur track south of the street crossing.

R. E. Dill, the fireman, testified that the bell of the engine had been ringing for about a half mile before the train reached the crossing, and that the whistle had been sounded at the crossing about a half mile south of the place where the accident occurred, and that the engineer again sounded the whistle as he approached the crossing where the accident occurred. The fireman testified that the train was traveling at a rate of speed of about 25 miles per hour; that the engine was about 200 feet south of the crossing when he saw the automobile roll up on the railroad track. He testified that the engineer again sounded the whistle as he approached the automobile and that he did not shut the whistle off to apply the emergency brakes. On this point he contradicted the statement of the engineer. The fireman testified that the camp cars were about 50 feet from the crossing. He testified that the plaintiff was driving at a rate of speed of about 5 or 6 miles an hour when he drove on the track, and that he could not see the plaintiff until he came from behind the camp cars.

F. L. Dennis, the baggage master on the train, testified that the engineer blew the whistle for the crossing, but that he could not say whether the bell was ringing as the train approached the crossing or not. He testified that the engineer blew the whistle right on up to the time that he struck the automobile.

Miss Laura Nell Hough and Mrs. Esther McGrew testified that when the accident occurred they were crossing the railroad tracks at another crossing about one block north of the place where the accident occurred, and that they saw the plaintiff drive his automobile up to the railroad crossing and stop near the west side of the tracks; that the plaintiff then drove on the track in front of the approaching train and stopped. The train hit the automobile and the automobile changed ends. Both of these witnesses stated that the train whistle was sounded

sometime before the train reached the crossing and that the whistle was blown continuously until the train struck the automobile.

The appellant's attorneys argue three main assignments of error on this appeal viz.: (1) That the appellee's proof failed to show negligence on the part of the appellant; (2) that the trial court erred· in refusing instructions requested by the defendant; and (3) that the verdict is excessive.

On the question of appellant's negligence, the appellant's attorneys say: (a) That the evidence was insufficient to support the theory that the appellee's view of the approaching train was obstructed; (b) that the appellee's proof was insufficient to show that the appellant failed to give the statutory signals by ringing the bell and sounding the whistle as the train approached the crossing; and (c) that neither the obstruction of the appellee's view of the approaching train nor the condition of the crossing was the proximate cause of the injury.

We think that the question of the defendant's negligence under the facts disclosed by the record was properly left for the jury to decide. ██ The evidence shows that the plaintiff's view of the crossing was obstructed by the parking of the camp cars, and there was a sharp conflict in the testimony as to whether the statutory signals were given. The peremptory instruction requested by the defendant was therefore properly refused.

██ The statute requires that the driver of an automobile stop at a distance of not less than ten feet nor more than fifty feet from the nearest track and look for an approaching train. The statute presupposes that a railroad company will not by its own act, except in cases of emergency, so obstruct the view at the crossing that the driver of an automobile will be unable to see an approaching train if he complies with the requirements of the statute; and when it is necessary for a railroad company, in the operation of its trains, to obstruct

the view at the crossing so that the driver of an automobile cannot see an approaching train, it becomes the duty of the railroad company's servants in charge of its trains in approaching the crossing to exercise greater caution to avoid striking persons lawfully using the crossing.

The general rule relating to the degree of care required of a railroad company to avoid collisions with travelers on the highway, where a dangerous condition has been created by the obstruction of the view of the traveler on the highway, is stated in 44 Am. Jur. p. 747, Railroads, Par. 507, as follows:　　　 ''The principle that if a crossing is unusually dangerous, ordinary care requires the railroad company to meet the peril with unusual precautions, is particularly ·applicable where the dangerous condition results from obstructions to the view which prevent a traveler from seeing an approaching train until he is dangerously close to the track. In such a case, the railroad company has the duty of exercising caution commensurate with the situation to avoid collisions with travelers on the highway, as by a less amount of speed, or by increased warnings, or otherwise, or, if an unslackened speed is desirable, by keeping a watchman on duty, or ·some other sufficient means of warning travelers, such as gates or other safety devices. Thus, to pass over a busy crossing at a high rate of speed without giving signals, where the view of approaching trains is obstructed, has been held to be negligence per se. On the other hand, the giving of the signals required by statute at crossings does not exhaust the duty of the railroad company at such a crossing. This rule of care applies notwithstanding the obstructions to the view are legitimate and necessary in the conduct of the business of the railroad company.''

The evidence in this case shows that the plaintiff stopped his automobile at the stop sign on the west side of the tracks as required by the statute, Section 7776, Code of 1942; and the plaintiff testified that he neither saw

nor heard the approaching train, and that no bell was ringing and no whistle was being sounded. The railroad company was under no statutory duty to station a servant at the crossing to warn the plaintiff of the approach of the train, but it was under a common law duty to exercise reasonable care to avoid injuring the plaintiff at the crossing, and the care required of the railroad company under such circumstances was such care as was commensurate with the increased hazard created by the parking of the camp cars in such close proximity to the crossing as to prevent the plaintiff from seeing the approaching train until after he had driven on the crossing. Bon Homie & Hattiesburg Southern Railroad Company v. Ferguson, 160 Miss. 433, 134 So. 146; Pokora v. Wabash Railway Co., 292 U.S. 98, 54 S. Ct. 580, 78 L. Ed. 1149, 91 A. L. R. 1049; Willet v. Michigan Central R. Co., 114 Mich. 411, 72 N. W. 260; Hires v. Atlantic City R. Co., 66 N. J. L. 30, 48 A. 1002.

The appellant's attorneys vigorously contend that the plaintiff's evidence was insufficient to make a jury issue as to the plaintiff's claim that the defendant failed to give the statutory bell and whistle signals, and cite in support of their contention the case of Yazoo & Mississippi Valley Railroad Company v. Lamensdorf, 180 Miss. 426, 177 So. 50, 178 So. 80.

In the Lamensdorf case the record showed that the deceased drove his automobile on the railroad crossing without stopping, looking and listening, and stopped his car on the crossing without alighting therefrom after becoming aware of the approaching train. It was shown in that case that the railroad was practically straight for two miles north of the crossing, and that one looking north from the crossing could see for more than a mile. The Court in its opinion noted especially that the highway crossing was in good condition, and that the gravel was level with the track. It was shown that when a person was 43 feet west of the crossing in the highway he could see beyond a trestle 408 feet north of the highway, and

when standing 29 feet west of the crossing he could see two water tanks in the Town of Shaw, or a distance of approximately a mile. At a point 27 feet west of the crossing a person could see a locomotive north of the whistling post 1290 feet north of the crossing; and at a point ten feet west of the crossing he could see a locomotive more than a mile north of the crossing. These facts show that in the Lamensdorf case there was no obstruction of the view northwardly along the railroad track at the time the deceased approached the crossing and drove on the track. The facts are mentioned here for the reason that they were set out in the opinion of the Court as material facts to justify the holding of the court that the defendant in that case was entitled to a peremptory instruction.

In the Lamensdorf case the plaintiff's chief witnesses and members of the railroad crew and several other disinterested witnesses testified that the statutory signals were given. One or two other witnesses for the plaintiff testified that they did not hear the whistle blow or the bell ring. The Court held that the negative testimony of these witnesses who testified that they did not hear the whistle or the bell, their attention being elsewhere, was insufficient to overturn the affirmative testimony of the other witnesses, including some of the plaintiff's witnesses, who had testified that the whistle was sounded and that the bell was ringing as the train approached the crossing.

In the case that we now have before us the plaintiff himself testified that no train whistle was sounded and no bell was ringing as he drove upon the crossing. The plaintiff's testimony to the effect that the statutory signals were not given was something more than negative testimony. In the case of Columbus & Greenville Railroad Co. v. Lee, 149 Miss. 543, 115 So. 782, 784, this Court said: ''Testimony that a fact did not occur, given by a witness 'so situated that in the ordinary course of events he would have heard or seen the fact had it occurred,' is

sufficient to warrant a jury in finding that the fact did not occur." ██ ██ The plaintiff's testimony to the effect that the statutory signals were not given was corroborated to some extent by the testimony of Cook Lewis, who drove over the crossing about the time that the plaintiff was approaching the crossing, and who testified that the train whistle was not blowing and the bell was not ringing when he crossed the railroad track just before the plaintiff drove his automobile on the track. It is true that the defendant's witnesses testified that the statutory signals were given, and this conflict in the testimony created an issue of fact for the jury to decide. The jury heard the testimony and observed the conduct of the witnesses as they were testifying and decided the issue in favor of the plaintiff, and, as stated by Judge McGowen in the case of Yazoo & Mississippi Railroad Company v. Pittman, 169 Miss. 667, 153 So. 382, 384, "neither the judge in the court below, nor this court, is permitted to substitute its judgment for that of the jury" on the factual issue thus presented.

There was no error in the court's refusal to grant the peremptory instruction requested by the defendant. ██ ██ And for the reason set forth above there was no error in the court's refusal to grant the instruction requested by the defendant which was designed to eliminate from consideration by the jury all questions relating to the speed of the train and the alleged failure of the enginemen to keep a proper lookout as the train approached the crossing. ██ ██ The defendant also requested an instruction to the effect that the defendant was under no duty to maintain warning signals or a flagman at the crossing. But no effort had been made by the plaintiff to show that the defendant was required to maintain a flagman or to install warning signals at the crossing, and there was no error in the court's refusal to grant that instruction.

There is no merit in the appellant's contention that the amount of the verdict is excessive. The injuries

sustained by the plaintiff were substantial injuries, and we do not think that the amount of the damages awarded is so excessive as to indicate bias, prejudice and passion on the part of the jury.

We find no reversible error in the record, and the judgment of the lower court is affirmed.

Affirmed.

**McGehee, C. J.,** and **Hall, Holmes** and **Ethridge, JJ.,** concur.