GULF, M. & O. R. Co., et al. *v.* SCOTT.

Feb. 16, 1953

No. 38537      20 Adv. S. 3      62 So. 2d 878

*Wilbourn, Wilbourn & Lord* and *J. V. Gipson,* for appellants.

*Nate S. Williamson, Lester F. Williamson* and *H. C. Watkins,* for appellee.

HOLMES, J.

On January 1, 1951, a taxicab in which Walter M. Scott was riding as a passenger was struck by a passenger train of the Gulf, Mobile and Ohio Railroad Company, known

as the Rebel. The accident occurred in the City of Meridian at the crossing of Twenty-seventh Avenue and the main line of the Gulf, Mobile and Ohio Railroad Company. Scott sustained injuries from which he died the next evening at about 7 o'clock. The taxicab was owned by Ordie Nicholson, doing business as the 207 Taxicab Company, and was being driven at the time by Clyde Ford, an employee and servant of Nicholson. Alzeta Scott, a minor of about the age of 18 years, and the widow and only heir of Walter M. Scott, whom she had married about a week prior to the accident, brought this suit by her next friend and father, Ruther Morrison, against the Gulf, Mobile and Ohio Railroad Company, J. J. Burnett, the engineer on the train, F. C. Ricks, the fireman on the train, Ordie Nicholson, the owner of the taxicab, and Clyde Ford, the driver of the taxicab, seeking the recovery of damages for the death of her husband, predicating liability upon the alleged joint and concurring negligence of the defendants. At the close of the plaintiff's evidence, a non-suit was taken as to the defendant, F. C. Ricks, and at the close of all of the evidence, the case was submitted to the jury under instructions of the court, and resulted in a verdict for the plaintiff for $7,500.00 as against all of the other defendants, and judgment was entered accordingly. From this judgment, the Gulf, Mobile and Ohio Railroad Company and J. J. Burnett prosecute this appeal. No appeal was perfected by the defendants Ordie Nicholson and Clyde Ford.

The negligence which the appellee charged to Nicholson and Ford was that Ford knew that the crossing in question was a highly dangerous public crossing and was frequented by both pedestrian and vehicular traffic, and that on the occasion in question, he was approaching the crossing in the taxicab at a highly dangerous, reckless, and excessive rate of speed, and without keeping a proper lookout for the approaching train, and under conditions whereby his view of the approaching train was obstructed

by cars on tracks adjacent to the main line track on which the train was approaching.

The negligence which the appellee charged to the railroad company and its engineer, the appellants here, was that the train in approaching the crossing was being operated in a careless, negligent, and dangerous manner, and at a highly dangerous rate of speed in excess of thirty miles per hour, and without keeping a proper lookout for persons using said crossing, and without having the bell or whistle of the locomotive continuously sounded for 900 feet from the crossing, and without maintaining a watchman at said crossing between the hours of seven o'clock A. M. and seven o'clock P. M. as required by an ordinance of the City of Meridian then in force. It was further charged that the railroad company had parked cars on both sides of Twenty-seventh Avenue and on the track immediately south of the main line track, and had thus obstructed the view of travelers on said avenue approaching said crossing from the south.

The answer of Nicholson and Ford denied any negligence on their part and averred that the death of the decedent resulted solely from the negligence of appellants; whereas the appellants answered that they were guilty of no negligence and that the death of the decedent resulted solely from the negligence of Ford in the operation of the taxicab.

No motion was made by appellants at the close of appellee's evidence to exclude the evidence and direct a verdict for the appellants, and at the close of all of the evidence, appellants requested and were refused a peremptory instruction.

The appellants urge as grounds for the reversal of the judgment of the trial court (1) that appellee's charges of negligence against the appellants were not substantiated by the evidence, and (2) that the jury was improperly instructed as to the law of the case; and (3) that the jury was influenced to the prejudice of the appellants by im-

proper remarks of counsel for appellee in his closing argument to the jury.

We think that the evidence was sufficient to create an issue of fact for the determination of the jury on the question as to whether or not appellants were guilty of negligence which proximately caused or contributed to the death of the decedent, and that the trial court committed no error in submitting this issue to the jury.

We deem it unnecessary to relate in detail the voluminous testimony of the numerous witnesses. It is sufficient to mention only the essential features of the evidence as disclosed by the record. The main line track of the railroad company which crosses Twenty-seventh Avenue runs generally in an east and west direction. Twenty-seventh Avenue, which is a paved avenue averaging thirty feet in width, runs generally in a north and south direction. The train in question was proceeding east from Mobile through Meridian to St. Louis on the main line track. The taxicab driven by Ford and occupied by the decedent as a passenger was proceeding north on Twenty-seventh Avenue. The area around the crossing in question comprised the railroad yards of the railroad company. Twenty tracks of the railroad company cross the avenue in the yards, and, according to testimony offered on behalf of the appellee, the operation of locomotives and cars in switching movements resulted in noise to such an extent that requisite signals given in the operation of trains could not be heard. Just prior to the accident, a locomotive to be attached to the train on arrival was moved in a westerly direction across the avenue at a point from 80 to 100 feet south of the scene of the accident, and proceeded to a point where it was to be attached to a switch engine. The switch engine, which was then east of the avenue, moved westward across the avenue and coupled to the locomotive and then moved east across the avenue, ringing its bell as it proceeded. The driver of the taxicab stopped to permit the locomotive and switch engine to pass, and as it cleared

the crossing he proceeded north in the direction of the scene of the accident, a distance of from 80 to 100 feet. According to the testimony of the taxi driver, he was traveling in low gear and at a speed of from 9 to 10 miles per hour. According to testimony of witnesses for the appellants, he was traveling at about 15 or 20 miles per hour. The train was admittedly approaching the crossing at a rate of speed of 20 to 25 miles per hour when the accident occurred. According to witnesses for the appellants, the bell or whistle was being sounded for a distance of 900 feet or more before the train reached the crossing. Some witnesses for the appellants who were engaged in the switching operation were unable to say whether the bell or whistle was being sounded or not. The taxi driver testified positively that neither the bell nor the whistle was sounded. The engineer could not see the approaching taxi, and the driver of the taxi could not see the approaching train because the view of each was obstructed by a string of railroad cars parked by the railroad company on either side of the avenue close to the crossing and on the track immediately south of the main line track. When the taxi emerged from behind this string of cars, it was approximately entering the crossing and was struck center by the train and carried a distance of approximately 280 feet before the train could be stopped by the application of its emergency brakes. A hostler's helper testified for the appellants that he flagged the switch engine across the avenue when it was proceeding west to be coupled to the locomotive, and that as the switch engine and locomotive cleared the crossing moving east, he was standing off of the pavement of the avenue and to the west of the avenue, and saw the taxi as it moved forward, and that he hollered to the driver and then turned on the light of his lantern and undertook to flag the driver, but was unable to attract his attention. Other witnesses for the appellant testified that they saw the hostler's helper undertaking to flag the taxi. One of the attorneys engaged in the case

testified that the hostler's helper had told him on more than one occasion that he did not see the taxi until it had gotten about even with him, and that the taxi had passed before he turned on the light of his lantern.

Witnesses for the appellants testified that the headlight of the approaching train threw its beam upward and illuminated the crossing and thus gave warning of the train's approach. Witnesses for the appellee testified that the crossing was lighted by street lights and the lights of the approaching taxi, and that this rendered ineffectual as a warning the headlight of the train. The accident happened, according to testimony of the railroad company's employees, at 7:05 o'clock P. M., and according to the testimony of witnesses for the appellee at a few minutes before 7 o'clock P. M. An ordinance of the City of Meridian required that a watchman be maintained at the crossing in question at all times between 7 o'clock A. M. and 7 o'clock P. M. It is admitted that no watchman was on duty at the crossing at the time of the accident, and that the watchman whose duty it was to flag at the crossing in question had been off duty since 3 o'clock P. M., and that the point at which the hostler's helper claimed to have flagged the taxi was a distance of from 80 to 100 feet south of the scene of the accident. The crossing in question was admittedly a dangerous crossing, and was frequented day and night by both pedestrian and vehicular traffic.

We think that it is manifest from the undisputed evidence that the railroad company had created a dangerous condition at the crossing in question by the obstruction of the view of a traveler approaching said crossing from the south on Twenty-seventh Avenue, and that it was under a duty to exercise reasonable care commensurate with the danger which it had created for the safety of persons using said crossing in the exercise of reasonable care.

"The general rule relating to the degree of care required of a railroad company to avoid collision with travelers on the highway, where a dangerous condition has

been created by the obstruction of the view of the traveler on the highway, is stated in 44 Am. Jur. p. 747, Railroads, Par. 507, as follows: ██ 'The principle that if a crossing is unusually dangerous, ordinary care requires the railroad company to meet the peril with unusual precautions, is particularly applicable where the dangerous condition results from obstructions to the view which prevent a traveler from seeing an approaching train until he is dangerously close to the track. In such a case, the railroad company has the duty of exercising caution commensurate with the situation to avoid collisions with travelers on the highway, as by a less amount of speed, or by increased warnings, or otherwise, or, if an unslackened speed is desirable, by keeping a watchman on duty, or some other sufficient means of warning travelers, such as gates or other safety devices. Thus, to pass over a busy crossing at a high rate of speed without giving signals, where the view of approaching trains is obstructed, has been held to be negligence per se. On the other hand, the giving of the signals required by statute at crossings does not exhaust the duty of the railroad company at such a crossing. This rule of care applies notwithstanding the obstructions to the view are legitimate and necessary in the conduct of the business of the railroad company.' '' New Orleans & Northeastern R. Co. v. Lewis, 214 Miss. 163, 58 So. 2d 486.

If the accident happened before 7 o'clock P. M., and the jury were warranted under the evidence in so believing, it was the duty of the railroad company under the ordinance of the City of Meridian to have a watchman at the crossing at the time of the accident. It is argued by the appellants that the efforts of the hostler's helper to flag the taxi at a point 80 to 100 feet south of the crossing in question served the purpose of a watchman at the scene of the accident. It does not appear, however, even from the testimony of the hostler's helper, that the driver of the taxi ever saw him or that the attention of the driver

was ever attracted. According to witnesses for the appellee, the taxi had passed before the hostler's helper turned on the light of his lantern.

It was clearly a question for the jury under all of the conflicting evidence whether or not appellants exercised such reasonable care as was required of them under the circumstances, and whether the failure so to do proximately caused or contributed to the death of the decedent. It may be conceded that the driver of the taxicab was negligent and yet, under the evidence, it was still a question for the jury to determine whether or not the joint and concurring negligence of the driver of the taxicab and the appellants proximately caused or contributed to the death of the decedent.

Innumerable instructions were granted to both sides, and we have carefully examined these instructions, as well as the instructions refused to the appellants, and we are of the opinion that the jury were properly instructed as to every conceivable phase of the issues involved. We find no prejudicial error in the instructions granted or the instructions refused.

Appellants contend, however, that the jury was influenced to the prejudice of the appellants by improper remarks of counsel for appellee in his closing remarks to the jury. The record discloses that every objection to the remarks of counsel was sustained by the trial court, and the jury instructed to disregard the remarks to which objection was made. We are unable to agree that the remarks of counsel to which objection was made and sustained so influenced the jury to the prejudice of appellants as to constitute reversible error.

Upon a careful review of the entire record, we are of the opinion that the issues involved were properly submitted to the jury under proper instructions, and that the record discloses no prejudicial error for which the judgment of the trial court should be reversed. Accordingly, the judgment of the court below is affirmed.

Affirmed.