**Eleanor Anne Patton BADGER et al.,
Plaintiffs-Appellants,**

v.

**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Defendant-Appellee.**

**No. 27612**

**Summary Calendar.**

United States Court of Appeals
Fifth Circuit.

Aug. 4, 1969.

█

George S. Shaddock, D. Cumbest, Cumbest, Cumbest & Shaddock, Pascagoula, Miss., for appellants.

George E. Morse, Gulfport, Miss., W. B. Hand, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., George E. Morse, Morse, & Morse, Gulfport, Miss., for appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

Following a jury verdict awarding damages for the wrongful death of

the driver of an automobile with which the railroad collided at the intersection of its tracks and a highway, the District Court denied appellant's motion for a new trial on damages only and granted appellee's motion for judgment notwithstanding the verdict. We reverse.[1]

Within the city limits of Pascagoula, Mississippi, about two o'clock in the afternoon of a clear day in August, 1966, the decedent, Doris Morgan Patton, was driving her station wagon in a northerly direction on Chico Road. As she was crossing the main line of the Louisville & Nashville Railroad, one of its passenger trains consisting of two engines and six cars, travelling in a westerly direction at 65 to 70 miles per hour, struck the vehicle resulting in Mrs. Patton's fatal injuries.

The husband and daughters of the decedent, as her heirs at law, sued the railroad under the Mississippi Wrongful Death Statute,[2] charging it with negligence in failing to exercise due care in traversing at excessive speed, without a proper lookout and without sounding its statutory warning signal,[3] a hazardous and dangerous crossing where it had permitted the view to become obstructed by high grass, shrubbery and trees.

There was hopeless conflict in the evidence concerning whether train signals were given, whether the view from the vehicle to the train was not obstructed, fully obstructed, or partially obstructed, and, if so, what distance down the track could be seen from what distance down the road. We do not know whether Mrs. Patton saw the train before the impact. We do know that the engineer saw the vehicle when the engine was 120 to 160 feet from the crossing—some 3 to 4 seconds before impact.

The trial judge, under these circumstances, wisely submitted the case to the jury on both liability and damages with a charge, however, that as a matter of law the railroad had the right of way at the crossing and that the decedent was guilty of negligence which contributed to her fatal injuries, thus the comparative negligence rule should be applied.[4]

We are convinced that the issues were properly presented to the jury and that the judgment on its verdict should be reinstated.

While it is true that Mississippi has, by statute, committed to the jury all questions of negligence and contributory negligence,[5] we agree with the District Court that the Mississippi statute is not controlling. The Boeing Co. v. Shipman, 5 Cir.1969, 411 F.2d 365; Johnson v. Buckley, 5 Cir.1963, 317 F.2d 644; Revlon, Inc. v. Buchanan, 5 Cir. 1959, 271 F.2d 795, 81 A.L.R.2d 222; Mississippi Power & Light Co. v. Whitescarver, 5 Cir.1934, 68 F.2d 928. The court was required to apply the standards of proof as delineated in *Boeing* in determining whether a peremptory instruction should be given for the railroad on liability, or judgment n. o. v., or whether such an instruction should or should not be given on the issue of contributory negligence.

It is undoubted that there were obstructions to the view of an automobile driver when a train was approaching this dangerous crossing from the vehicle's right. The density of the obstruction and whether one must come dangerously close to the track before

1. Pursuant to new Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. *See* Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804.

2. Mississippi Code Annotated (1942 Recompiled) § 1453.

3. Mississippi Code Annotated (1942 Recompiled) § 7777.

4. Mississippi Code Annotated (1942 Recompiled) § 1454.

5. Mississippi Code Annotated (1942 Recompiled) § 1455.

being able to see the train were factual resolutions to be made by the jury. *Cf.* Howard v. Missouri Pac. R. R., 5 Cir. 1969, 410 F.2d 1144. If the crossing, by virtue of these conditions, is unusually dangerous, ordinary care requires the railroad to meet the peril with unusual precautions, as by a lesser rate of speed, or by increased or additional warnings. *See* Illinois Central R. R. v. Williams, 1961, 242 Miss. 586, 135 So.2d 831; Gulf, Mobile & O.R.R. v. Scott, 1953, 216 Miss. 532, 62 So.2d 878; New Orleans & Northeastern R. R. v. Lewis, 1952, 214 Miss. 163, 58 So.2d 486. The speed of the train was 65 or 70 miles per hour at the crossing when the accident occurred, although the railroad's time book prescribed a limit of 25 miles per hour for some distance before, and at the place of the accident. We are more persuaded by what the railroad's time book stated was a reasonable speed under the circumstances than by the argument of its counsel that it makes no difference whether the train was travelling 100,000 M.P.H. More importantly, however, the jury apparently found the time book persuasive.

Nor do we find it unimportant to consider whether the train signals statutorily required to be given were in fact sounded. The railroad argues that even assuming that signals were not sounded, the failure to do so was not a proximate cause of the accident. But this we think assumes too much. The whistle board was located 1560 feet from the crossing. The whistle was required to be blown and the bell was required to be turned on from this point onward. If this had been done (the evidence on this point is in conflict), there would have been some warning to those about to use the crossing, which admittedly was obstructed to some extent, and if the train had been travelling 25 instead of 65 to 70 miles per hour, the warning time to the public would have been materially increased. We do not indulge in speculation concerning whether there would have been an accident if the speed of the train had been different, but we do recognize the fact that warning signals are required for the obvious purpose of warning the public that a train is approaching a crossing. The longer the warning the greater likelihood there is that it will be effective.

■ Considering all of the evidence we are convinced that there was a conflict that created a jury question concerning the railroad's liability. There was "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions * * *. [I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Boeing, supra,* at 374–375.

■ We are equally convinced that the District Court's instruction to the jury that as a matter of law the decedent was guilty of negligence which contributed to her fatal injuries was correct. Appellant's only argument that there was a fact issue concerning contributory negligence is based upon the scant testimony of one witness that the decedent stopped her vehicle before going upon the railroad tracks. Whether she stopped or not it cannot be gainsaid that she either didn't look just prior to traversing the track, or, if she did look, she did not act prudently at a time when she might have saved herself from disaster. Again, considering all of the evidence in the light and with all reasonable inferences most favorable to appellant, we think that "the facts and inferences point so strongly and overwhelmingly in favor of one party [appellee] that * * * reasonable men could not arrive at a contrary verdict," *Boeing, supra,* at 374, and thus the instruction concerning contributory negligence was not only proper but required.

■ From the amount of the jury verdict it is obvious that the jury applied the Mississippi rule of comparative negligence as the Court correctly charged it to do. Under these circum-

stances the amount of the verdict cannot be said to be inadequate.

The judgment of the District Court is reversed with instructions to reinstate the judgment entered upon the verdict of the jury.

Reversed with instructions.