# IN THE COURT OF APPEALS 04/22/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 95-CA-00168 COA

**JERRY BYRON WOODS, BY AND THROUGH HIS ADOPTED FATHER AND NEXT FRIEND, JERRY KENNETH WOODS**

**APPELLANT**

**v.**

**ILLINOIS CENTRAL RAILROAD CO.**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. JAMES W. BACKSTROM

COURT FROM WHICH APPEALED: GREENE COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT: J. ROBERT SULLIVAN

GRADY F. TOLLISON, JR.

BARBARA MILLER TUTOR

ATTORNEYS FOR APPELLEE: VICKI R. LEGGETT

PATRICK H. ZACHARY

NATURE OF THE CASE: WRONGFUL DEATH

TRIAL COURT DISPOSITION: JURY VERDICT IN FAVOR OF DEFENDANT/APPELLEE

CERTIORARI FILED: 7/11/97

BEFORE THOMAS, P.J., COLEMAN, AND KING, JJ.

THOMAS, P.J., FOR THE COURT:

Sybil Woods was killed when an Illinois Central Railroad train struck her vehicle in McLain, Greene County, Mississippi. Woods' survivors filed a wrongful death action against Illinois Central, with the jury finding in favor of Illinois Central. Jerry Byron Woods (Byron), Sybil's son, appeals the verdict, raising the following issues as error:

> **I. THE JURY VERDICT WAS CONTRARY TO THE SUBSTANTIAL WEIGHT OF THE EVIDENCE AND RESULTED FROM THE TRIAL COURT'S REFUSAL TO GRANT A PEREMPTORY INSTRUCTION THAT ILLINOIS CENTRAL BREACHED ITS DUTY TO KEEP ITS RIGHT-OF-WAY CLEAR OF OBSTRUCTIONS.**
>
> **II. THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON QUESTIONS RELATING TO EASEMENTS WAS ERRONEOUS AND PREJUDICIAL, RESULTED IN JUROR CONFUSION AND CAUSED THE JURORS TO FAIL TO FOLLOW THEIR OATHS.**
>
> **III. ONE OF THE JURORS WAS NOT QUALIFIED TO SERVE AS A JUROR IN GREENE COUNTY, MISSISSIPPI.**
>
> **IV. EVEN IF NO SINGLE ISSUE ALONE WAS ERROR, THE ISSUES IN COMBINATION REQUIRE THAT A NEW TRIAL BE GRANTED SO THAT INJUSTICE MAY BE PREVENTED.**

Finding no error, we affirm.

## FACTS

On January 30, 1991, an Illinois Central train was traveling in a southerly direction on its designated thirty-one-mile route from Beaumont, Mississippi to Evanston, Mississippi. Illinois Central employees on the train that day were A.J. Bohannon, engineer; D.R. "Red" Reeves, fireman; Donald Morgan, brakeman; R.B. Reeves, conductor; and Charles Goleman, flagman.

The train had to travel over three crossings in McLain--the first crossing is located at Pecan Street, the second at Church Street, and the third at Magnolia Street. The accident at issue in this case occurred at the Magnolia Street crossing. As the train traveled through McLain on January 30, 1991, it was moving at a speed of forty miles an hour.

The train was approaching the Magnolia Street crossing from the decedent's left on the day of the accident. Engineer Bohannon was keeping a lookout on the left side of the train and was relying upon

Fireman Reeves to keep a proper lookout on the right side of the train. As the train approached the first crossing, Fireman Reeves saw an automobile approaching the tracks. When the automobile did not stop, Fireman Reeves yelled at Engineer Bohannon to place the train into emergency. When it was evident that there could be some type of collision or emergency, he made an emergency application of the brakes. A collision occurred between train and automobile resulting in the death of Sybil Woods, the driver of the car.

Illinois Central owned the track and land over which the train was traveling on the day in question, and its right-of-way extended fifty feet beyond the center line of the track on each side of the track. Two dump bodies, the detachable backs of dump trucks, were situated to the north and west of the crossing. The decedent's estate argued at trial, with several witnesses and photographic evidence, that besides the dump bodies there were many other obstructions to the decedent's view of the crossing, including a cherry picker, a butane tank, hedges, telephone or utility poles, and street signs. Illinois Central rebutted these arguments at trial and had several witnesses testify that the cherry picker was not present. Accordingly, whether a cherry picker, which obstructed the decedent's view, was in fact present on Illinois Central's right-of-way was a hotly disputed fact. Both parties had expert witnesses testify as to the decedent's visibility of the oncoming train on the day in question. Decedent's estate's expert testified that the crossing on Magnolia Street was ultra hazardous at the time of the collision and had Illinois Central improved the sight deficiencies, by removing the dump bodies that day, Sybil would not have been killed. Illinois Central's expert testified that the crossing on Magnolia Street was not termed extra hazardous and that the accident occurred as a direct result of the actions of Sybil Woods.

When they were empaneling the jury in this case, the judge questioned all potential jurors whether they were qualified electors or resident freeholders of Greene County for more than one year. There were no negative responses to the judge's questions from potential jurors. Juror Harvey C. Moulds was a juror tendered by Byron to Illinois Central and ultimately served as a juror in this case. Byron's counsel learned during jury deliberations that Moulds allegedly resided in Jackson County as opposed to Greene County. Byron's counsel raised this as a basis for a new trial. The lower court held two evidentiary hearings on this matter and determined that the information did not warrant a new trial.

## I.

## THE JURY VERDICT WAS CONTRARY TO THE SUBSTANTIAL WEIGHT OF THE EVIDENCE AND RESULTED FROM THE TRIAL COURT'S REFUSAL TO GRANT A PEREMPTORY INSTRUCTION THAT ILLINOIS CENTRAL BREACHED ITS DUTY TO KEEP ITS RIGHT-OF-WAY CLEAR OF OBSTRUCTIONS.

Byron argues that the lower court should have granted a new trial because the jury decision was against the overwhelming weight of the evidence and totally contrary to the verdict for Illinois Central. Byron claims the substantial weight of the proof established that Illinois Central owed Sybil Woods a duty to keep its right-of-way free of obstructions that would cause her to have to get so dangerously close to the tracks before she could see or hear the train approaching and that it breached this duty by failing to remove obstructions from the right-of-way. Byron argues that because the substantial weight of the evidence established a duty and breach of this duty by Illinois Central, the trial court should have granted Byron's requested peremptory instruction on those

elements.

The grant or denial of a motion for a new trial is and always has been a matter largely within the sound discretion of the trial judge. *Clark v. Columbus & Greenville Ry. Co.*, 473 So. 2d 947, 950 (Miss. 1985). A lower court should only grant a motion for a new trial "when upon review of the entire record a judge is left with a firm and definite conviction that the verdict if allowed to stand would work a miscarriage of justice." *Id.*

There is no doubt that in a negligence action a party asserting this negligence must prove that the opposing party had a duty, that this party breached their duty, causation, and damages resulting therefrom. There can also be no doubt that Illinois Central owes a duty to keep its right-of-way free of obstructions that *would prevent drivers from seeing and hearing an approaching train*. However, what Byron wants this Court to do is to take the decision away from the province of the jury and determine that if Illinois Central obstructed the view it is negligent as a matter of law.

Byron complains that the trial court abused its discretion by denying jury instruction P-11-A. Jury instruction P-11-A is a peremptory instruction on negligence, and it instructed the jury that the failure of the railroad to remove the dump bodies, by itself, was negligence. However, that is not the law of this State. Case law in Mississippi only places a duty upon the railroad to take additional precautions where a dangerous condition results from obstructions to view, which prevent a motorist from seeing an approaching train until they are dangerously close to the track. *New Orleans & Northeastern R.R. Co. v. Lewis*, 214 Miss. 163, 171, 58 So. 2d 486, 489 (1952). The issue for the jury to decide was whether the dump bodies were in fact an obstruction and, further, to find that the dump bodies obstructed the view of the decedent. Whether a crossing is unusually dangerous due to obstructions to view is a matter for the jury to decide. *See Slay v. Illinois Cent. Gulf R.R. Co.*, 511 So. 2d 875, 880 (Miss. 1987); *Illinois Cent. R.R. Co. v. Williams*, 242 Miss. 586, 595, 135 So. 2d 831, 834 (1961); *Badger v. Louisville & N.R.. Co.*, 414 F.2d 880, 883 (5th Cir. 1969). Whether the dump bodies blocked the decedent's view, and whether she was required to come dangerously close to the tracks before being able to see the train, were factual resolutions that the lower court properly submitted to the jury. *Badger*, 414 F.2d at 883. Where evidence showed that the decedent's view was obstructed and there was conflicting testimony, the lower court properly denies a peremptory charge as this is a factual question properly left for the jury to decide. *New Orleans & Northeastern R.R. Co. v. Lewis*, 214 Miss. 163, 171, 58 So. 2d 486, 489 (1952).

Conflicts in evidence are to be resolved by the jury. Reasonable and fair-minded jurors in the exercise of impartial judgment, because of the photographic evidence and the contrast in the theories of Byron's experts and Illinois Central's experts, might reach different conclusions about whether the decedent's view was obstructed. It is the jury's function as the traditional finder of the fact, and not this Court, to weigh conflicting evidence and inferences. Based on the foregoing, we cannot say that the jury's verdict was against the overwhelming weight of the evidence.

## II.

**THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON QUESTIONS RELATING TO EASEMENTS WAS ERRONEOUS AND PREJUDICIAL, RESULTED IN JUROR CONFUSION AND CAUSED THE JURORS TO FAIL TO FOLLOW THEIR OATHS.**

The record shows that during its deliberations, the jury submitted written questions to the trial court inquiring as to "Who is responsible for land maintenance or upkeep on an easement?" and "Who has (or claims easements) to the north of Magnolia crossing?" The trial judge responded by stating that it would not be appropriate for him to answer the questions sent out and that the jury had before them the evidence and had received the instructions of law.

Byron argues that the only proof of easements at this crossing came from Illinois Central's counsel, in that counsel opposite posed questions to a witness regarding easements. However, a review of the record does not support Byron's argument. Below is an excerpt from the record:

Q. [Mr. Tollison, Byron's attorney] Train crews generally know that railroads have easements on fifty side (sic) of the track from the center line. Now, you're not going to deny that, are you?

A. Easements?

Q. Yeah. Right-of-way.

A. Well, there is a difference.

Q. There's a railroad's right-of-way.

* * * *

Q. Well, you testified under oath that the railroad had a hundred foot right-of-way there.

A. Right, the right-of-way, that's correct.

The term easement and right-of-way were clearly, in some places during the trial, used synonymously. However, our review of the jury instructions reveals that despite apparent jury confusion, distinct and unambiguous statements of the law, which adequately informed the jury of the governing law, were given as jury instructions. Specifically, Jury Instruction P-1-A, instructed the jury that the railroad had a duty to avoid injuring motorists at its crossings, and that "duty includes an obligation to refrain from allowing obstructions to the view which prevent a traveler from seeing an approaching train until he is dangerously close to the track." Additionally, P-2 instructed the jury as to the railroad's duty if the jury concluded that the subject crossing was unusually dangerous as a result of the dump bodies and other machinery on the railroad's right-of-way.

Byron complains that the answer to the jury's request for additional instruction by the trial judge was not responsive, and perpetuated the confusion of the jury. We cannot presume the jury became confused. While the response given by the trial court to the jury in the instant case was not specific, we do not find the reply misleading. A trial judge's charge ought not only be correct, but be adapted to the case and explicit enough not to be misconstrued or misunderstood by the jury in the application of the law to the facts. The response by the trial judge was a correct statement of the jurors' duties. Furthermore, after considering the evidence presented in the case, we do not find that the statement made by the trial court was so misleading that a different verdict would have resulted. We presume that the jury followed these instructions given to it by the trial judge. In conclusion, we do not find the instruction given by the trial court to be so misleading as to prejudice Byron and

deprive him of a fair trial. Therefore, we overrule Byron's second assignment of error.

## III.

## ONE OF THE JURORS WAS NOT QUALIFIED TO SERVE AS A JUROR IN GREENE COUNTY, MISSISSIPPI.

Byron argues that juror Harvey C. Moulds was not qualified to serve as a juror in the subject action as he was not a resident of Greene County, Mississippi. Moulds' information card suggested that he lived at Rt. 5, Box 82, Lucedale, Mississippi. The attorneys for Byron contend that a few moments before the jury rendered its verdict they overheard a conversation suggesting that Moulds lived in Jackson County. They did not relate this information to the trial judge until after the jury returned its verdict.

They held two post-trial evidentiary hearings on the matter. The trial court determined that Mould was qualified to serve as a juror in the subject action, and even if he were not qualified, Mississippi Code Annotated § 13-5-1 provides that the lack of any such qualifications would not vitiate a verdict.

Mississippi Code Annotated § 13-5-1 (1972) governs the competency of a juror and provides in pertinent part:

> Every citizen not under the age of twenty-one years, who is either a qualified elector, or a resident freeholder of the county for more than one year, is able to read and write, and has not been convicted of an infamous crime, or the unlawful sale of intoxicating liquors within a period of five years and who is not a common gambler or habitual drunkard, is a competent juror. No person who is or has been within the twelve months the overseer of a public road or road contractor shall, however, be competent to serve as a grand juror. **The lack of any such qualifications on the part of one or more jurors shall not, however, vitiate an indictment or verdict**.

Miss. Code Ann. § 13-5-1 (1972) (emphasis added).

The Mississippi Constitution of 1890, Section 264, which stated "the want of such qualification in any juror shall not vitiate any indictment or verdict," is substantially embodied in Section 13-5-1. The Mississippi Supreme Court has addressed this constitutional section, which is now embodied in Section 13-5-1, and whether a juror who was not a qualified elector will vitiate a verdict. In *Serio v. City of Brookhaven*, 208 Miss. 620, 634-35, 45 So. 2d 257, 261 (1950), a summons was issued for a James A. Wallace, and James R. Wallace, who was not qualified, ended up serving on the jury. *Id.* at 634, 261. The Court held that when a person, although not a qualified elector, was accepted and served on the jury, no ground for a new trial was furnished. *Id.* at 635, 261. In *Fulcher v. State*, 82 Miss. 630, 633, 35 So. 170, 170 (1903), the Court held that an objection that a juror was an alien and therefore not a qualified elector cannot be made after a verdict has been rendered. In *Tolbert v. State*, 71 Miss. 179, 14 So. 462 (1893), the Court stated "[t]he mistake as to the juror, . . . summoned by mistake, . . . attended, and was accepted and served, is not ground for setting aside the verdict. . . . It is only where that occurs which impugns the fairness of the trial that a ground is presented for a new trial." *Id.* at 191, 463 (citing Miss. Const. of 1890, § 264).

Mississippi Code Annotated § 13-5-1 speaks squarely to the issue presented by this appeal. The alleged lack of qualification of Harvey C. Moulds does not render the verdict defective, and thus the trial court properly denied Byron a new trial on this issue.

## IV.

## EVEN IF NO SINGLE ISSUE ALONE WAS ERROR, THE ISSUES IN COMBINATION REQUIRE THAT A NEW TRIAL BE GRANTED SO THAT INJUSTICE MAY BE PREVENTED.

Byron states in his last assignment that even if no single issue he has raised on appeal justifies granting a new trial, a combination of factors existed which caused the jury to render an erroneous verdict. Thus, the trial court, in its discretion, should have granted Byron a new trial on that basis and failure to do so amounted to an abuse of discretion.

Although individual errors may not establish prejudice, they may, in combination, equal prejudice compelling a reversal. In attempting to avail himself of this principle, however, Byron simply repeats his previous arguments. We have already discussed the issues and found them all to be lacking in merit. Based on the record, Byron received a fair trial in the circuit court.

**THE JUDGMENT OF THE GREENE COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. HINKEBEIN, J., NOT PARTICIPATING.**