KITCHENS, Justice,
dissenting:
¶ 58. In the instant case, there exists “substantial evidence in support of the verdict;” thus, a reversal of the final judgment by this Court is improper. Illinois Cent. R. Co. v. Hawkins, 830 So.2d 1162, 1169 (Miss.2002).

Horn activation and failure to sound the bell

¶ 59. When a train is approaching a public crossing, Mississippi Code Section 77-9-225 (Rev.2009) provides that “[t]he whistle or horn shall be kept blowing at repeated intervals until said crossing is passed.” In other words, the statute requires breaks in the sounding of the horn. One of Travis’s eyewitnesses, Thelma Washington, testified that she heard the locomotive horn blowing continuously with no breaks in the sounding of the horn.
¶ 60. Travis’s audiology expert, Dr. David Lipscomb, testified about the importance of breaks in sounding the horn. According to Dr. Lipscomb, “interrupted sound, from a standpoint of hearing ability, hearing detection, signal detection and warning sound detection, is much more effective and more desirable than a steady, unchanging sound level.” He opined that Michael Travis, in the absence of an interrupted horn, would have been aware of the continuously blowing horn about one second before impact. Illinois Central’s own internal rule of operation requires the train horn to be blown in a repeated pattern of two long signals, one short, and one long when approaching a crossing. The train’s event data recorder corroborated Thelma Washington’s testimony that the train crew failed to operate the horn in the manner prescribed by law and mandated by the railroad’s internal rules.
¶ 61. The majority finds the conflicting evidence adduced by Illinois Central to be more compelling, and thus finds in its favor. However, this is a question that our system of justice entrusts to the fact finder, the jury. See Hawkins, 830 So.2d at 1180 (holding that conflicting evidence on whether train crew failed to sound horn in accordance with state statute was a question for the jury). It is beyond dispute that the jury resolved this important question in favor of Travis, thereby ascribing more credence to the evidence that the crew negligently failed to sound the horn or bell in the required manner prescribed by the statute.
¶ 62. Contrary to the majority’s finding, the evidence that the bell was not sounded *342 was far from being irrelevant and inadmissible, given that it was central to Travis’s contention that, in order to comply with Section 77-9-225, the crew could have sounded the bell to mitigate its failure to sound the horn in repeated intervals. Accordingly, I would find that the trial judge properly admitted testimony concerning the failure of the crew to sound the train’s bell.

Whether the train crew’s failure to act constituted negligence.

¶ 63. According to Travis, Illinois Central’s internal operating rules required not only a lookout, but also required that the crew take immediate action if anything on the tracks created any doubt or uncertainty. Jim Scott, a train operations expert, testified that “the proper lookout is no good unless you act upon the lookout.”
¶ 64. As the train was approaching the Mileston crossing that morning, a dangerous situation was unfolding. A farm tractor with a large implement was moving at a very slow rate over the tracks and taking up the other lane of travel to such a degree that Michael Travis had to reverse his vehicle and wait for the tractor to clear the tracks. It was undisputed that during the train’s approach to the crossing, the crew saw the tractor on the railroad tracks. The testimony of the conductor, A.C. Isaac, was that he was anxious about the tractor’s making it across the tracks. As the train moved closer, despite Isaac’s having seen the tractor on the tracks, the crew failed to apply the train’s brakes. In fact, the brakes were not applied until nine seconds after impact. The question of whether the train crew failed to maintain a proper lookout and failed to apply the brakes was for the fact finder to resolve. See Slay v. Illinois Cent. Gulf R. Co., 511 So.2d 875, 880 (Miss.1987) (recognizing that this Court has held previously that whether an engineer failed to maintain a proper lookout is a jury question).
¶ 65. The majority relies heavily on case law establishing that train crews have a right to assume that a vehicle will heed warnings and the visual approach of the train and come to a stop. Maj. Op. at ¶ 31. Mississippi Code Section 77-9-249(4) (Rev. 2009) provides:
At any railroad grade crossing provided with visible railroad crossbuck signs without automatic electric or mechanical signal devices, crossing gates or a human flagman giving a signal of the approach or passage of a train, the driver of a vehicle shall, in obedience to such railroad crossbuck sign, yield the right-of-way and slow to a speed reasonable for the existing conditions, and shall stop if required for safety at a clearly marked stop line, or if no stop line, within fifty (50) feet, but not less than fifteen (15) feet, from the nearest rail of the railroad, and shall not proceed until he can do so safely.
However, even if a driver violates this provision, Section 77-9-249(3) dictates that “the question of whether or not the said violation was the sole or approximate cause of the accident and injury shall be for the jury to determine.” This provision is clear that a driver in violation of the statute shall not be precluded from recovering damages. Id. The jury considered whether Michael’s negligence contributed to the accident and answered in the affirmative — as evidenced by the jury’s verdict which found Michael only 25% liable for the accident.[15] Thus, the jury rejected the defense’s argument that Michael’s actions *343 were the sole proximate cause of the accident.

Crossbuck sign at the Mileston crossing 
[16]

¶ 66. Michael’s truck came to a stop on the grade of the crossing, not on the tracks. The train struck the right front fender of his truck. The plaintiffs presented evidence at trial depicting the crossbuck at Mileston, and how with no stop sign or other markers to provide direction, Michael could have been led to believe that he was stopping at a safe distance from the track when he was not.
¶ 67. Dr. Bernhard Abrams, an expert who has designed erossbucks, testified that the crossbuck at the Mileston crossing was discolored due to its age, that the black and white contrast was not clearly discern-able to the approaching driver, that the lettering had peeled off, and that it failed on all accounts to meet the standards prescribed by the Manual on Uniform Traffic Control Devices (MUTCD). The majority discredits this testimony based on its looking at the photographs and concluding the following: the crossbuck was visible, the words on the crossbuck were legible, and, thus, the crossbuck was in compliance with state law and the MUTCD. Maj. Op. at ¶39. Such an exercise by the majority strikes me as impermissible appellate fact finding, an endeavor which is far afield of our function as an appellate court. Fact finding is a job for jurors, not jurists.
¶ 68. Additionally, the majority finds “[rjegardless of the location or condition of the erossbuck sign, Michael had a duty to stop fifteen feet before the tracks to determine if it was safe to proceed.” Maj. Op. at ¶ 42. In actuality, a driver approaching a railroad crossing “without automatic electric or mechanical signal devices, crossing gates or a human flagman giving a signal of the approach or passage of a train” shall “yield the right-of-way and slow to a speed reasonable for the existing conditions,” or must stop “if required for safety” “within fifty (50) feet, but not less than fifteen (15) feet, from the nearest rail of the railroad.” Miss.Code Ann. § 77-9-249(4) (Rev.2009). Regardless of whether Michael violated a statutory duty to stop fifteen feet from the rails, Section 77-9-249(3) provides that a failure on the part of the driver to stop within a reasonably safe distance does not preclude a cause of action for negligence against the railroad, but rather becomes a question for jury. Moreover, this Court has interpreted Section 77-9-249(3) as dictating “that a negligent plaintiff is still owed a duty” by the railroad company. Hawkins, 830 So.2d at 1179. This issue was properly submitted to the jury and resolved in favor of Travis. Whether the vegetation surrounding the crossing made it an unusually dangerous crossing.
[I]t has been held that negligence claims against a railroad that permitted the view at a crossing to become obstructed by trees, bushes, weeds and grass were matters for the jury to decide when a vehicle operator would have to proceed to a point of peril upon or dangerously near the railroad company’s tracks before obtaining an unimpeded view of a train at an appreciable distance. Stacey v. Illinois Cent. R.R., 491 F.2d 542, 544 (5th Cir.1974).
Hawkins, 830 So.2d at 1170-71 (quoting Clark v. Illinois Cent. R.R., 794 So.2d 191, 194-95 (Miss.2001)). Eyewitnesses testified that vegetation had grown up at the crossing to such a degree that a driver had *344 to be almost on the tracks to see an approaching train. These witnesses, on cross-examination, were presented with the photographs which Illinois Central has maintained provided evidence of an unimpeded view of the train. On cross-examination, the eyewitnesses questioned the angle from which the photographs had been taken and asserted that the photographs did not appear to have been taken from the perspective of what would have been Michael’s impeded line of sight on the day of the accident. The accuracy of the photographs was a disputed issue of fact during the trial, and this Court ought not decide as a matter of law that the photographs must be accepted as uncontradicted proof that Michael Travis had an unimpeded view of the train prior to impact.
¶ 69. Notwithstanding the conflicting evidence before the jury as to whether the vegetation was overgrown, clearly the jury decided this question of fact in favor of Travis. In fact, this Court, in its previous opinion in this case, held that JNOV should not have been granted on this issue:
[BJased on conflicting testimony as to the existing vegetation at the Mileston crossing on the date of the accident, and the actions of Michael and the crew members on the train, we are constrained to find, as a matter of well-established law, that there exists in the record evidence of such quality and weight that reasonable and fair-minded jurors, in the exercise of impartial judgment, might have reached different conclusions as to the appropriate verdict. Thus, we are unable to find that the trial court committed error in denying Illinois Central’s motion for a judgment notwithstanding the verdict; therefore this issue is without merit.
Irby v. Travis (Travis I), 935 So.2d 884, 890 (Miss.2006) (emphasis added). The law of the case doctrine establishes that “[wjhatever is ... established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on ... the interests of orderly and consistent judicial procedure.” Mauck v. Columbus Hotel Co., 741 So.2d 259, 266-67 (Miss.1999) (quoting TXG Intrastate Pipeline Co. v. Grossnickle, 716 So.2d 991, 1019 (Miss.1997)). I agree with Travis’s argument that the law of the case doctrine applies to this issue, given that the testimony and photographic evidence regarding the vegetation surrounding the crossing were the same in the first and second trials. Accordingly, I would hold that this Court has previously held this issue was without merit, and we should not address it.

Elevated grade of the crossing

¶ 70. At trial, Travis presented testimonial evidence from witnesses familiar with the conditions of the Mileston crossing on the day of the accident. The testimony was that the steep incline at the crossing leading up to the rails made it impossible for two vehicles to cross at the same time, testimony that was supported by Michael’s having had to back down the incline and then drive back up the grade at the crossing.
¶ 71. The cases cited by the majority pertaining to the conditions of the roadway leading to the crossing have no application to the instant case, given that Travis is not making a claim respecting negligent maintenance of the road, but rather, the construction and maintenance of the steep grade for which Illinois Central is responsible pursuant to the plain language of Mississippi Code Section 77-9-251 (Rev. 2009), which dictates that where a railroad, such as this one, “is constructed so as to *345 cross a highway, and it be necessary to raise or lower the highway, it shall be the duty of the railroad company to make proper and easy grades in the highway, so that the railroad may be conveniently crossed, and to keep such crossings in good order.” Finally, this Court, in Hawkins, 830 So.2d at 1178, held that the admission of testimony on the incline at this same Mileston crossing and testimony that this was demonstrative of the “overall danger involved at this crossing” was not an abuse of discretion.
¶ 72. Given that there was testimony that the grade had been constructed at a steep incline, coupled with testimony regarding the surrounding, overgrown vegetation, both of which provided proof that Michael’s ability to see the oncoming train was impeded at the time of the accident, I cannot find that this verdict was not supported by substantial evidence. These factors, when considered along with concurrent circumstances that the crew of the approaching train was not giving proper audible warnings and made no effort to slow or stop the train upon observing dangerous conditions at the crossing, lend strong support to the jury’s verdict.
¶ 73. “[Tjestimony ‘must be so strongly preponderate that the court can safely say it was overwhelmingly in favor of the appellant,’ before this Court will interfere with a jury’s verdict.” Slay v. Illinois Cent Gulf R. Co., 511 So.2d 875, 881 (Miss.1987) (quoting Jackson v. Griffin, 390 So.2d 287, 289 (Miss.1980)). “The jury heard the testimony and observed the conduct of the witnesses as they were testifying and decided the issue in favor of the plaintiff, and ... ‘neither the judge in the court below, nor this court, is permitted to substitute its judgment for that of the jury’ on the factual issue thus presented.” New Orleans & Northeastern R. Co. v. Lewis, 214 Miss. 163, 175, 58 So.2d 486, 491 (1952) (quoting Yazoo & Mississippi R.R. Co. v. Pittman, 169 Miss. 667, 153 So. 382, 384 (1934)). To reverse and render the verdict on these factual issues where substantial evidence supports the verdict is to substitute this Court’s judgment for that of the jury. Accordingly, I am unable to join the majority opinion.
CHANDLER AND KING, JJ., JOIN THIS OPINION.

. Based on this apportionment of fault, the trial court reduced the damages awarded by the jury accordingly.

. If Travis’s argument that a crossbuck must be twelve feet from the nearest rail is procedurally barred for failure to support authority in support thereof, then this Court should decline to address it.