221 Miss. 253 (1954)
72 So.2d 446
65 Adv. S. 12
GULF, MOBILE & OHIO R.R. CO.
v.
GOLDEN.
No. 39205.
Supreme Court of Mississippi.
May 17, 1954.
*255 Welch, Gibbes & Butts, Laurel, for appellant.
*256 Deavours & Hilbun, William H. Odom, Grover C. Doggette, Laurel, for appellee.
*258 KYLE, J.
Cleveland Golden, plaintiff, recovered a judgment against the Gulf, Mobile and Ohio Railroad Company, defendant, in the Circuit Court of the Second Judicial District of Jones County, for the sum of $2,500 as damages for personal injuries alleged to have been sustained by him when the taxicab that he was driving collided with a diesel switch engine at a railroad crossing. From that judgment the defendant prosecutes this appeal.
The accident occurred about 2:30 a.m. on September 14, 1951, at the railroad crossing on Hickory Street, in the City of Laurel.
The declaration charged negligence on the part of the railroad company in failing to give the statutory warning signals, in failing to provide a clear and unobstructed view of the crossing where the accident occurred, in operating the locomotive at an excessive rate of speed, in failing to maintain a proper lookout, and in failing to maintain a reasonably safe street crossing at the *259 intersection. The defendant's answer denied such negligence, and alleged that the accident was caused by the negligence of the plaintiff in operating his automobile at a high and reckless rate of speed and in disregard of the warnings given.
The record shows that the appellant's railroad track runs north and south at the point where the accident occurred. Hickory Street runs east and west and crosses over the track at right angles. Hickory Street was a graveled street at the time of the accident. The main line track and two side tracks crossed the street at the intersection. There was an old ice house on the south side of Hickory Street and immediately west of the railroad crossing, and west of the ice house there was an alley and then a cafe. West of the cafe there was a thickly populated colored residential section. About 40 steps south of the Hickory Street crossing there was a railroad tool house, 10 or 12 feet high, on the west side of the railroad right of way. The plaintiff testified that at the time of the accident there was a long row of cross-ties stacked between the tool house and the crossing, and that there were high weeds along the railroad right of way between the railroad track and the ice house.
The plaintiff, who was a cab driver, testified that he approached the intersection from the west, and that he stopped at a point about the ice house and looked in both directions to see whether a train was approaching. He saw no train approaching, and as he proceeded in low gear over the crossing the locomotive struck his taxicab about the center of the cab door. The plaintiff testified that he heard no bell ringing or whistle blowing, although his hearing was good at that time and his cab window was down. No warning signal was given by any member of the engine crew. The plaintiff testified that he received a cut on the back of his head, and a cut on his hand, and an injury to his knee; and that he lost a piece of his left ear. He also claimed that his nervous system had been seriously impaired, and that *260 he had lost his "manhood," as a result of the injuries sustained by him in the collision.
The plaintiff's testimony concerning the failure of the train crew to give the statutory signals was corroborated by Robert L. Chambers. Chambers testified that he crossed the railroad track from the opposite direction just before the collision occurred; that he stopped, looked and listened when he approached the crossing, and that he did not hear a bell ring, or a whistle blow. He stated that if there had been a bell ringing or a whistle blowing, he would have heard it. He passed the plaintiff's cab four or five yards west of the railroad track. The plaintiff was traveling at a rate of speed not over four or five miles per hour. The plaintiff's testimony concerning his bodily injuries was corroborated by the testimony of Dr. T.J. Barnes, who treated the plaintiff for his injuries.
The engineer and fireman, and two other members of the train crew testified for the defendant. All testified that the statutory signals were given, that the whistle was blown for the crossing, and that the bell was ringing as the engine approached the crossing. The engineer testified that the engine was a diesel motor engine weighing 1600 tons, and was approximately 56 feet long. It was equipped with a brake system that could be operated by two brake valves, an independent brake valve and an automatic brake valve; and it was equipped with proper head lights. There were no box cars attached to the engine at the time of the accident. There were five members of the train crew in charge of the engine, namely, an engineer, a fireman, two helpers and a foreman. The only crew member who saw the taxicab approaching the crossing was the fireman, who was seated on the left side of the cab of the engine. The fireman testified that when he saw the taxicab approaching the track it was two or three car lengths from the crossing. The diesel engine at that time was about the same distance from the crossing. The fireman called to *261 the engineer, "Ho, here comes one," and the engineer immediately applied the brakes; but before the engine was brought to a complete stop the collision occurred. The fireman and the other members of the crew testified that the taxicab struck the footboard on the left front side of the engine, and was pushed or dragged northwardly about 50 feet from the point of the impact. Other members of the train crew testified that the engine approached the crossing at a rate of speed from 4 to 8 miles per hour.
George Jones, another employee of the railroad company, who was not a member of the train crew, testified that he was walking along the east side of the track near the crossing at the time of the collision, that he saw the locomotive lights and heard the whistle blowing and the bell ringing, as the engine approached the crossing. He also testified that he saw the cab approaching the crossing at a rate of speed of 35 or 40 miles per hour, and he did not see the cab stop until it collided with the locomotive. On cross-examination, the witness admitted that the crossing looking south down the main line was in a way a blind crossing.
The engineer, Earl Griffin, was named as a co-defendant in the declaration. But the jury returned a verdict against the railroad company only.
The first point argued by the appellant's attorneys as ground for reversal on this appeal is that the evidence was insufficient to show that the members of the train crew were negligent in any manner in the operation of the locomotive engine as the engine approached the crossing; that the evidence failed to show that the engine was running at such rate of speed as to constitute negligence, or that the engineer and fireman failed to maintain a proper lookout, or to give proper warning as the engine approached the crossing. But there was a direct conflict in the testimony of the plaintiff and his witness, Chambers, and the testimony of the members of the train crew, as to whether the statutory signals *262 were given, and also as to the rate of speed of the taxicab as it approached the crossing. There was also a conflict in the testimony relating to the obstructions along the west side of the railroad track looking southwardly from the Hickory Street crossing, which might have prevented a traveler from seeing an approaching train, until he was dangerously close to the track, and which might have prevented the members of the train crew from seeing an automobile approaching the crossing, until the engine was dangerously close to the crossing. The plaintiff's contention was that these obstructions were such as to require the exercise of unusual precautions by the members of the train crew to meet the dangerous conditions resulting from such obstructions. (Hn 1) All of these conflicts in the testimony presented issues of fact that were properly submitted to the jury. Illinois Central R. Co. v. Williams, 144 Miss. 804, 110 So. 510; Columbus & Greenville R. Co. v. Lee, 149 Miss. 543, 115 So. 782; Yazoo & Mississippi Railroad Co. v. Pittman, 169 Miss. 667, 153 So. 382; N.O. & N.E.R. Co. v. Lewis, 214 Miss. 163, 58 So.2d 486; Gulf, M. & O.R. Co. et al. v. Scott, 216 Miss. 532, 62 So.2d 878; Donald, Admr., v. Gulf, M. & O.R.R. Co., 220 Miss. 714, 71 So.2d 776.
The appellant next contends that the court erred in refusing to admit photographs of the railroad crossing offered in evidence as exhibits to the testimony of M.S. Horn, the train master at Laurel who visited the scene of the accident about 10 o'clock a.m., approximately 7 1/2 hours after the accident occurred. The pictures were taken at that time, and Horn was present when the pictures were taken. Horn testified that the pictures offered in evidence were accurate representations of what he saw there at that time. The plaintiff objected to the introduction of the photographs on the ground that the pictures were taken after the accident occurred, "the accident occurred in the nighttime, and the picture being taken in the daytime." The court sustained the objection. *263 The appellant argues that the photographs should have been admitted in evidence.
(Hn 2) The rule is that, "Before a photograph may be admitted in evidence, it must be shown by extrinsic evidence to be a true and faithful representation of the place or subject it purports to represent as it existed at a time pertinent to the inquiry." 32 C.J.S., p. 620, Evidence, par. 715. (Hn 3) The material inquiry is whether or not the photograph is a fair and accurate reproduction and representation of conditions as they existed at the time of the collision involved. Cinderella Foods, Division of Stevens Industries, Inc. v. Miller (Miss.), 52 So.2d 641; Wheat v. Teche Lines, Inc., 181 Miss. 408, 179 So. 553.
(Hn 4) The time at which a photograph offered in evidence was taken is important only with reference to the question of probability of change in condition of the object or objects portrayed. The mere fact that a photograph was taken at a time different from that in question does not render it inadmissible if the witness is able to verify it as a substantial representation of the conditions as they existed at the time in question. (Hn 5) Nor does the fact that the conditions were somewhat changed before the photograph was taken render the photograph inadmissible if the changes were not material, and if the changes are carefully pointed out and brought to the jury's attention. 20 Am. Jur., p. 611, Evidence, par. 731.
(Hn 6) In the case that we have here, however, Horn did not testify that the conditions that existed at the time the photographs were made were the same as the conditions that existed at the time of the collision involved. Nor was it shown by the testimony of any other witness that the conditions were the same. Under these circumstances, we are unable to say that the trial judge was in error in refusing to admit the photographs in evidence.
(Hn 7) It should be noted also that the original photographs, which were in the hands of the witness Horn at *264 the time that he was examined, were not sent up as a part of the record on this appeal. We have not seen the photographs; and if the witness had testified that they were fair and accurate representations of the conditions as they existed at the time of the collision, we would still be unable to say that the refusal of the trial judge to admit the photographs in evidence constituted reversible error. Le Barron v. State, 107 Miss. 663, 65 So. 648.
It is next argued that the court erred in refusing to grant two instructions requested by the appellant. In (Hn 8) Instruction No. 2, which the court refused to grant, the court was requested to charge the jury that there was no obligation on the part of the defendant to furnish a flagman at the Hickory Street crossing. But the declaration did not charge, and the plaintiff did not attempt to show, that the defendant was required to furnish a flagman at the crossing; and there was no error in the refusal of the court to grant that instruction. (Hn 9) Instruction No. 6, in the form requested, amounted in effect to a charge that the plaintiff could not recover in any event if the bell of the locomotive was kept ringing continuously for a distance of 300 yards before it reached the crossing. That instruction was likewise properly refused.
We find no reversible error in the record and the judgment of the lower court is therefore affirmed.
Affirmed.
All justices concur.