618 So.2d 1313 (1993)
George GIVENS, Jr.
v.
STATE of Mississippi.
No. 90-KA-880.
Supreme Court of Mississippi.
May 27, 1993.
*1314 Herman F. Cox, Gulfport, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SMITH, Justice, for the Court:
This is a criminal appeal from the Circuit Court of Jackson County, wherein appellant George Givens, Jr. was convicted of simple possession of cocaine. Givens, who had been indicted for possession with intent to distribute, was also charged with being a subsequent offender subject to the enhanced punishment provision of Miss. Code Ann. § 41-29-147 (1990) and an habitual offender pursuant to § 99-19-81 (1990). At the close of the trial, the judge granted the defendant's motion for directed verdict as to the intent to distribute and permitted the jury to deliberate only on the simple possession charge, for which the jury found Givens guilty. Thereafter, in accordance with the subsequent offender statute and the habitual offender statute, Givens was sentenced to spend six (6) years, without possibility of probation or parole, in the custody of the Mississippi Department of Corrections. Aggrieved, Givens appeals to this Court, assigning as error the following:
I. The trial court erred in overruling the defendant's motion for a directed verdict at the close of the state's case and in denying the defendant's request for a pre-emptory [sic] instruction of not guilty, and further erred in overruling the defendant's motion for a judgment notwithstanding the verdict, or, in the alternative, motion for new trial, because the prosecution failed to prove its case against the defendant and the verdict was against the overwhelming weight of the evidence, and the verdict evinced bias and prejudice against the defendant.
II. The trial court erred in overruling the two motions to dismiss/quash indictment and/or demur to the indictment which were dated March 13, 1989 and July 18, 1989, and erred in overruling the supplement to the motion to dismiss/quash indictment and/or demur to the indictment.
III. The trial court erred in not allowing into evidence the photographs offered on behalf of the defendant to depict the area where this incident and his arrest occurred.
IV. The trial court erred in refusing defense instruction D-1, which was a request for a pre-emptory [sic] instruction of not guilty.
V. The trial court erred in failing to sustain the defendant's motion to strike/dismiss habitual offender portion of the indictment and enhanced provision of the indictment.
VI. The trial court erred in sentencing the defendant to six years without benefit of parole in view of the fact that the sentence imposed in said cause was disproportionate to the crime for which he was convicted, and amounted to cruel and unusual punishment in contradiction of the Eighth Amendment of the United States Constitution.
VII. The trial court was in error in refusing to grant jury instructions D4, D6, D10, & D11.
VIII. The trial court erred in granting instruction No. S-2.
*1315 We find the need for discussion of only issues III and VII. The others are without merit and will not be discussed. Upon examination of issues III and VII, we find no error and affirm the decision of the trial court.

FACTS
On the night of September 20, 1988, at approximately 9:00 p.m., Officer Paul Leonard of the Pascagoula Police Department responded to a disturbance at the V.F.W. on Live Oak Avenue. Finding no disturbance in that area, Officer Leonard proceeded to the intersection of Live Oak and Verdon, near a housing project known as Carver Village, where he observed a Chevrolet Monte Carlo run a stop sign. Officer Leonard stopped this vehicle and began speaking to the driver. The driver related to the officer that he was leaving the area because there had been some kind of disturbance and he was afraid of getting beaten up. During the time that Officer Leonard talked to the driver, two things happened: (1) Officer Richard Jones arrived as back-up, and (2) a crowd of between thirty to over a hundred people began to gather approximately 25-45 feet from where the vehicle was stopped.
Givens was at the front of the crowd yelling in the direction of Officer Leonard and the driver of the stopped vehicle. Leonard noted this behavior and immediately focused his rechargeable "stream light," a powerful flashlight, directly on Givens. The crowd backed away, leaving Givens standing alone at the front of the group. There were cars with their headlights on; there was one street light directly at the scene; and at least two other street lights close by. Officer Jones testified that he had his flashlight in his hand but did not use it because the lighting was "real good." Officer Leonard was in the street approximately 25-45 feet from Givens. His patrol car was parked at an angle across the street. Officer Leonard, with his "stream light" focused upon Givens, saw Givens toss a plastic bag. Officer Leonard never lost sight of Givens as he approached Givens, who was standing beside a pickup truck.
Givens was instructed to place his hands on the pickup truck. No extensive search was required. Officer Leonard immediately found a plastic bag, its contents intact, exactly where he saw the bag tossed by Givens. There were no other plastic bags, litter, or even a plastic blue beer cup located in the immediate area. Officer Leonard found the plastic bag containing thirty (30) rocks of crack cocaine beside the tire of the pickup truck. Officer Leonard identified the bag at trial as the same bag he saw Givens toss to the ground. At the scene, Givens denied ownership of the bag.
At trial, Givens presented two witnesses, Shawn Shelton and Clyde Robinson, who testified that they had been standing next to Givens at Carver Village and had not seen him throw down any plastic bag. Furthermore, they testified that the only thing they had seen in Givens' hand was a blue cup which he had thrown down when Officer Leonard shined his flashlight on him. Givens testified that he had been at Carver Village and that he had been yelling in the direction of Officer Leonard and the driver who had run the stop sign, but that he was simply advising the driver that should he be taken to jail that Givens would come get him out. Givens denied any knowledge of the plastic bag and testified that the only thing he had thrown down was a blue cup of beer when the officer shined his flashlight on him and told him to place his hands on the back of the truck.
At the conclusion of the trial, the trial judge reduced the charge to simple possession, and the jury returned a verdict of guilty. Givens' motion for judgment notwithstanding the verdict, or, in the alternative, a new trial, having been denied, this appeal followed.

LAW

III.

The trial court erred in not allowing into evidence the photographs offered on behalf of the defendant to depict the *1316 area where this incident and his arrest occurred.
Givens contends the trial court committed reversible error in excluding four photographs purporting to depict the scene in question.
The Mississippi Rules of Evidence, Rules 401-403, provide guidelines for determining admissibility of photographs, which rules state:
Rule 401. DEFINITION OF "RELEVANT EVIDENCE." "Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Rule 402. RELEVANT EVIDENCE GENERALLY ADMISSIBLE; IRRELEVANT EVIDENCE INADMISSIBLE. All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible.
Rule 403. EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
However, "the determination as to whether photographs are admissible rests within the sound discretion of the trial judge whose decision will be upheld absent a showing of abuse of discretion." Lanier v. State, 533 So.2d 473 (Miss. 1988); Watson v. State, 483 So.2d 1326 (Miss. 1986); Stevens v. State, 458 So.2d 726 (Miss. 1984). The trial judge's decision to exclude the photographs in question must be examined in light of this standard.
Givens claims that the photographs are admissible under this Court's holding in Hancock v. State, 209 Miss. 523, 536, 47 So.2d 833, 839 (1950):
All that is required, as to the time of making photographs, is that they be verified as substantial representations of the conditions as they existed at the time in question. Oral proof can explain the changed conditions. "Photographs of the scene of an accident taken at or near the time are not always obtainable, and the only practical rule would seem to be that the changes must not be such as to destroy their substantial identity and that the changes, whatever they may be, should be carefully pointed out and brought to the jury's attention." 20 Am. Jur., Sec. 731, p. 611.
Hancock, 209 Miss. at 536, 47 So.2d at 839.
"The rule is that, `Before a photograph may be admitted into evidence, it must be shown by extrinsic evidence to be a true and faithful representation of the place it purports to represent as it existed at a time pertinent to the inquiry.'" Gulf, Mobile & Ohio R.R. Co. v. Golden, 221 Miss. 253, 263, 72 So.2d 446, 450 (Miss. 1954). If the photographs at issue depicted the conditions substantially as they appeared on the night in question, they could have been of great benefit to the jury. However, there were several noticeable and substantial differences in the conditions as portrayed in the photographs.
Most significantly, in the attempted reproduction, no "stream light" flashlight was focused directly on Givens. Further, the area pictured was not where Givens was standing on the night in question, but rather was at the back of the building where the street lighting was different. Givens himself noted the different location and the lack of the same lighting in the pictures. When shown one of the photographs at issue, Givens testified on cross-examination, "[T]here is one light where we was standing." Then he was asked, "[T]his shows three, correct?" Givens replied that "[T]hat's in the back of the building. We talking about the front. That's where we was, in the front. We was in the front of the building."
*1317 Givens denies that there was adequate lighting at the scene. Givens' eyewitness, Clyde Robinson, stated that there "ain't no lights down in the village." The prosecutor asked, "[W]hat are these up here?", pointing out lights in the photographs in question. The photographs also do not show Givens alone at the front of the crowd with a direct beam of light from a flashlight focused on him. Clyde Robinson admitted that "the officer shined his light and just picked Mr. George Givens out of the crowd." While testifying to the numerous changed conditions, Givens and his two witnesses, Shelton and Robinson, all seemingly contradicted both their own testimony and that of Officers Leonard and Jones when they stated that the photographs nonetheless fairly and accurately showed the conditions which existed on the night in question.
The State objected to introduction of the photographs, contending that the photographs had great potential for confusing the jury since they did not give a true and accurate representation of the lighting conditions on the date in question. The changes directly contradict the testimony of the arresting officers and should be considered material in light of this testimony and their potential to mislead. The Court sustained the State's objection on the ground that it could not be shown that these photographs represented the lighting conditions on the date of the offense with any degree of accuracy. For this reason, these photographs had great potential for confusing the jury. See Butler v. State, 253 Miss. 760, 179 So.2d 184 (1965) (trial court correctly excluded photographs which tended to confuse the matter).
The photographs were not representative of the conditions as they actually existed, and the differences in lighting, in particular, were incapable of being explained to a jury. The testimony of the photographer may have shed some light on the pictures. He stated he took the photographs from across the street. This fact alone would have placed the distance depicted between Givens and Officer Leonard further than that indicated by all testimony elicited at trial. The photographer further stated that he took the photographs using a wide variety of exposures and that the amount of light was controlled through the use of the "F-stop" to get the "desired effect." There were no cars with headlights on as testified to during the trial. No reason was given why the photographs could not have been taken in front of the building where the incident actually occurred rather than at the back of the building. The photographs are clearly of a different scene altogether. They could never be deemed substantial representations of the scene as they are neither true, fair nor accurate representations of the scene.
This Court has affirmed the refusal of a trial court to admit photographs of an accident scene into evidence where the photographer "was unable to qualify the photographs by testifying that they were a fair and accurate representation of the scene as it existed at the time of the accident." Wactor v. John H. Moon & Sons, Inc., 516 So.2d 1364, 1367 (Miss. 1987).
Our guidelines for the use of photographic evidence, as set forth in Hancock v. State, 209 Miss. 523, 47 So.2d 833 (1950), do not require a different result. In Hancock, photographs of the severely beaten body of a child were admitted over the defendant's objections that they did not depict the condition of the body at the time of death and were not shown to be accurate. The photographs in Hancock were photographs taken of the body at the funeral home. Two doctors, the undertaker, and the photographer all testified that the pictures were accurate representations of the physical condition of the body at the time they were taken, with the exception that slight skin discolorations and the full extent of wounds to the head were not depicted. Also, the photographer stated the photographs were as true and accurate representations of the body as could be made by any equipment.
The Court held, as to the time of the making of a photograph, that pictures were not required to be taken immediately at or near the actual time of the accident or event at issue, but were only required to be "verified as substantial representations of *1318 the conditions as they existed at the time in question." Hancock 47 So.2d at 839. In the case at bar, it is not the fact that the photographs were taken eight months after the incident occurred which is most troublesome. Rather, the testimony of the witnesses for the State as well as the defense, including that of the defendant himself, conclusively show that the conditions depicted by the photographs were not substantially the same as the conditions on the night in question.
This Court has stated "[t]he mere fact that a photograph was taken at a time different from that in question does not render it inadmissible if the witness is able to verify it as a substantial representation of the conditions as they existed at the time in question." Gulf, Mobile & Ohio R.R. Co. v. Golden, 221 Miss. at 263, 72 So.2d at 450. (emphasis added). In addition, "[n]or does the fact that the conditions were somewhat changed before the photograph was taken render the photograph inadmissible if the changes were not material, and if the changes are carefully pointed out and brought to the jury's attention." Id. (emphasis added). While the changed conditions were discussed at trial, it cannot be said in light of the testimony of Givens and defense witnesses Shelton and Robinson that the changed conditions were not both substantial and material.
The defendant's focus on the conditions as depicted by the photographs illustrates the very concern which the State expressed in objecting to the use of them in the first place: the photographs had great potential for confusing the jury as to the conditions which actually existed on the night in question. That the photographs could contain substantial differences from the conditions that actually existed, yet still be classified as substantial representations of those same conditions, defies logic. The photographs would have served no useful purpose as they were in no way substantial representations of the conditions as they existed at the time in question. For these reasons, we hold that the trial court correctly refused to admit these photographs into evidence.

VII.

The trial court was in error in refusing to grant jury instructions D4, D6, D10, & D11.
There is no merit to the argument of Givens that the trial court was in error in refusing to grant jury instructions D-4, D-6, D-10 and D-11. Only instruction D-10 warrants discussion. As to the refusal of the trial court to grant circumstantial evidence instruction D-10, often referred to as the "two-theory" instruction, we hold that no error resulted. The resolution of this assignment of error turns on whether there was any direct evidence supporting the State's case  if so, then the instructions were properly refused.
Keys v. State, 478 So.2d 266 (Miss. 1985) provides a detailed discussion by this Court on the giving of circumstantial evidence instructions. This Court stated:
A correct statement is that the instruction must be given only where the prosecution is without a confession and wholly without eye witnesses to the gravamen of the offense charged. The least inadequate definition we can provide is that circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to logical inference that such fact does exist. Conversely, eye witness testimony is thought of as direct evidence.
478 So.2d at 267-68. (emphasis added).
Givens claims that the State's case was purely circumstantial and thus the trial court erred in refusing an instruction on circumstantial evidence. In support, Givens cites the following passage from Henderson v. State, 453 So.2d 708, 710 (Miss. 1984):
In this case the trial court erred in refusing to give these two instructions on circumstantial evidence. Where all the evidence tending to prove the guilt of the defendant is circumstantial, the trial court must grant a jury instruction that every reasonable hypothesis other than that of guilt must be excluded in order to convict. Sanders v. State, 286 So.2d 825, 828 (Miss. 1973); Matula v. State, *1319 220 So.2d 833, 836 (Miss. 1969). Also where the evidence is purely circumstantial, the trial court must grant a "two-theory" instruction such as D-6. Johnson v. State, 347 So.2d 358, 360 (Miss. 1977); Nester v. State, 254 Miss. 25, 29, 179 So.2d 565, 566 (1965).
The "two-theory" instruction spoken of in Henderson is an almost verbatim reproduction of jury instruction D-10, refused in the case at bar. Herein, if there was any direct evidence supporting the State's case, then the instruction was properly refused; if not, such refusal constitutes reversible error.
The record reveals testimony by Officer Leonard that he "observed Mr. Givens throw a bag down to the surface, to the ground." He identified the bag containing the cocaine as "the item that I saw Mr. Givens throw to the ground, that I transported to the station, and Officer Coon and I sealed it in the evidence bag." Officer Leonard admitted on cross-examination that he could not see the contents of the bag that Givens threw down, that he momentarily lost sight of the bag, and that he had not searched the ground around Givens at any point previously. No fingerprints were found on the bag. As a result, Givens contends that this was purely a circumstantial evidence case. However, unlike the situations in Burnham v. State, 467 So.2d 946 (Miss. 1985), and Henderson v. State, 453 So.2d 708 (Miss. 1984), there remains direct evidence placing the controlled substance within the physical possession of Givens  the testimony of Officer Leonard.
A case factually similar to the case at bar is Hicks v. State, 580 So.2d 1302 (Miss. 1991). As in this case, Hicks threw down a film canister containing narcotics and a police officer witnessed the act. Hicks' request for a constructive possession instruction was refused by the trial court which stated, "[T]here is clear evidence establishing actual possession by Hicks from the testimony of the detective, who actually saw Hicks with the canister ..." Id. at 1306.
Similarly, there is direct evidence of actual possession in the present case. Officer Leonard testified that he saw, at a distance of about 25 feet, a plastic bag leave Givens' hand and travel to the ground, where it was immediately seized in an area close to Givens. Although the general area was littered and crowded, Leonard stated that no other plastic bags were found in the immediate area, nor were there any plastic cups.
The defendant emphasizes that Officer Leonard stated he was unable to "see the contents of the bag that Givens threw down, that he momentarily lost sight of the bag, and he had not searched the ground around Givens at any point previously." In particular, the defendant is concerned with a statement made by Officer Leonard that he lost sight of the plastic bag "for an instant" after it left Givens' hand and traveled to the ground. A detailed examination reveals the statement of the facts given in Hicks is essential for comparison purposes with the case at bar.
When the investigation did not materialize in this area, the detectives moved the investigation to the corner of Booker and Harrison Streets.
Detective Isles noticed that Hicks was clutching a small black item which he suddenly pitched across the ditch toward a telephone pole. The item land [sic] between the telephone pole and a guide wire. Detective Isles was about 100 feet from where Hicks threw the black item. Detective Isles approached Hicks and asked him to place his hands on the patrol car. Detective Isles then asked the other detectives... to watch Hicks while he returned to the spot where he saw Hicks pitch the black item. Detective Hicks retrieved a small black film canister; it was the only item there except for a soft drink can. The grass in the area was not overgrown.
Detective Isles further testified that during drug raids through the area, it was routine to find stashes of drugs in weeds, under bricks, in tree limbs, under car tires, and other locations without knowledge to whom the drugs belonged.
580 So.2d at 1303.
We would submit that the arresting officer in Hicks could not have kept his eyes *1320 directly trained on the canister thrown 100 feet away from him, while also approaching and detaining Hicks at the patrol car and then walking across the street to retrieve the item. Note also that in the case at bar, Officer Leonard was only 25-45 feet away when he first saw Givens toss the plastic bag. Further, it is even less likely that the officer in Hicks could have seen through a black film canister to know drugs were inside, or that he had searched the area previously since the surveillance was not originally scheduled to take place in the area where the drugs were found. The facts as stated in Hicks and in the present case are nearly identical, as should be the result; the trial court correctly refused to grant Givens' requested instructions, as did the lower court in Hicks.
This Court has emphasized "the general rule is that all instructions must be supported by the evidence. Where an instruction is not supported by the evidence then it should not be given." Hicks, 580 So.2d at 1306, citing Dennis v. State, 555 So.2d 679, 683 (Miss. 1989); Moffett v. State, 540 So.2d 1313 (Miss. 1988); Nicolaou v. State, 534 So.2d 168 (Miss. 1988). Further, "[g]ranting instructions not supported by evidence is error." Hicks, 580 So.2d at 1306; Lancaster v. State, 472 So.2d 363, 365 (Miss. 1985).
Further, in King v. State, 315 So.2d 925 (Miss. 1975), this Court affirmed the trial court's refusal to grant the "two-theory" instruction and another circumstantial evidence instruction where an eyewitness testified to the shooting in a manslaughter case. This Court noted the importance of eyewitness testimony:
The appellant's conviction did not rest upon circumstantial evidence. There was an eyewitness to the shooting who testified in great detail as to what happened. The credibility of the witness and the weight and worth to be given his testimony was for the jury to decide. The verdict is evidence that the jury believed the eyewitness and not the appellant, which they had a right to do.
Id. at 926.
Givens admitted that he had been drinking beer practically all night. Givens further stated that Officer Leonard pulled a gun on the crowd, telling everyone to get back. Yet the officers and Givens' own eyewitnesses stated simply that Officer Leonard unsnapped his holster. The jury may have considered all these facts during its deliberations and weighed them (taking credibility issues into account) against Givens.
This Court has held a trial court is not required to give, nor is a defendant entitled to receive, circumstantial evidence instructions where direct evidence of a crime is presented. See Deal v. State, 589 So.2d 1257 (Miss. 1991); Ladner v. State, 584 So.2d 743 (Miss. 1991); King v. State, 580 So.2d 1182 (Miss. 1991); Sudduth v. State, 562 So.2d 67 (Miss. 1990); Woodward v. State, 533 So.2d 418 (Miss. 1988), certiorari denied 490 U.S. 1028, 109 S.Ct. 1767, 104 L.Ed.2d 202, rehearing denied 490 U.S. 1117, 109 S.Ct. 3179, 104 L.Ed.2d 1041; Boches v. State, 506 So.2d 254 (Miss. 1987).
We find that the trial court's refusal to grant the circumstantial evidence instruction requested by Givens was clearly correct in view of the eyewitness testimony of Officer Leonard and substantial supporting testimony of Officer Jones.

CONCLUSION
For the reasons stated above, we hold that the lower court did not commit error in both refusing to admit the photographic evidence offered by appellant, and in refusing to grant the requested circumstantial evidence instructions. The issues raised by the defendant are without merit. We affirm.
CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCE OF SIX (6) YEARS WITHOUT POSSIBILITY OF PAROLE OR PROBATION, AS AN HABITUAL OFFENDER, PURSUANT TO MISS. CODE ANN. § 99-19-81, AND AS A SUBSEQUENT OFFENDER, PURSUANT TO MISS. CODE ANN. § 41-29-147, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
*1321 HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
DAN M. LEE, P.J., concurs in results only.