# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CT-00818-SCT

*CURTIS BROWN*

*v.*

*PROFESSIONAL BUILDING SERVICES, INC.*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2016 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | STEVEN HISER FUNDERBURG |
| | JASON HOOD STRONG |
| | ROBERT L. GIBBS |
| | ROGER C. RIDDICK |
| | CRAIG ROBERT SESSUMS |
| | MARCIAL DAVIDSON FORESTER, III |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STEVEN HISER FUNDERBURG |
| | CRAIG ROBERT SESSUMS |
| ATTORNEYS FOR APPELLEE: | JASON HOOD STRONG |
| | ROBERT L. GIBBS |
| | RICHARD BENJAMIN McMURTRAY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 08/30/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     Curtis Brown petitioned this Court for a writ of *certiorari*, claiming the Mississippi

Court of Appeals erred in affirming the judgment entered by the Hinds County Circuit Court

in favor of Professional Building Services (PBS). Brown claimed the trial court had abused its discretion by admitting certain evidence and by instructing the jury with instructions to which Brown had objected at trial.

¶2. Finding that the jury was instructed properly on this evidence and that the testimony was provided by an expert qualified under Mississippi Rule of Evidence 702, we affirm the judgment of the Court of Appeals, and we affirm the judgment of the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶3. Brown was the former clubhouse manager at Colonial Country Club in Jackson, Mississippi, which closed its doors in 2014. On September 28, 2012, Brown arrived at the clubhouse around 5 p.m. to do a monthly inventory of the "19th Hole Lounge" and "the grill"—a restaurant inside the clubhouse. That night, PBS employees also were at the clubhouse, cleaning and vacuuming the grill area. Around 8:00 p.m., the PBS staff left, leaving Brown alone in the clubhouse.

¶4. After finishing his reports, Brown walked around the clubhouse to make sure all of the doors had been locked. Brown testified that, as he approached the grill, he noticed that the overhead lights were off, that the lights were on behind the bar, in the pool area outside, and in the hallway outside the grill. An ice cream machine, a soda machine, and beer signs inside the grill also produced some light. Brown noted that, with this secondary lighting, "[the grill] is never totally dark." On cross-examination, Brown told PBS that there was "quite a bit of light," even though the overhead lights had been turned off.

¶5.    Brown testified that, "as soon as [he] made the turn" into the doorway of the grill, he stumbled and fell over a chair positioned "right in the doorway." He testified that his whole body went over the chair, the chair turned over, and he hit the ground. He felt immediate pain in his knees and face, then he passed out. When he woke up, he noticed his knees were swollen, but there was no blood. He tried to stand up but fell and fainted again. When he woke up a second time, Brown crawled to his phone and called his brother, who arrived at the clubhouse to take him to St. Dominic Hospital.

¶6.    On separate occasions at the hospital, and before he was given pain medication, Brown told a doctor and a nurse that he had been injured when he hit a chair while running up stairs at work. But he told Michael Barrett, Colonial's general manager, that he had been injured chasing a mouse through the grill. He later reiterated the mouse story to Grace Owens, a bartender at the clubhouse. However, at trial, Brown testified that he did not remember describing any of these alternative versions of the events.

¶7.    At St. Dominic Hospital, Brown was diagnosed with a bilateral patellar tendon rupture in both knees and underwent surgery for the injuries a few hours after he was admitted. Brown spent three days recovering in the hospital; then, he was transferred to Methodist Rehabilitation Hospital, where he had two more operations and spent more than two months rehabilitating.

¶8.    In December 2014, Brown filed a negligence action against PBS. When the trial concluded on March 10, 2016, the jury returned a verdict in favor of the defendant. After

3

reviewing Brown's post-trial motions, the circuit court denied Brown's requests for relief and entered a final judgment on the jury verdict.

¶9.    Brown timely appealed, raising five issues. Therein, Brown argued that the trial judge had abused his discretion by:

> (1) overruling Brown's objection to a photo of a chair in the doorway to the grill,
>
> (2) denying Brown's request for a jury instruction that specifically mentioned that the overhead lights in the grill were turned off,
>
> (3) allowing a defense expert in biomechanics to testify that Brown's claim that he suffered bilateral patellar tendon ruptures by walking into a chair was not "plausible,"
>
> (4) excluding one answer from his treating physician's deposition testimony regarding the general possibility that there could be mistakes in medical records, and
>
> (5) by responding to a note from a juror with a general instruction to continue deliberations.

*Brown v. Prof'l Bldg. Servs., Inc.*, 2017 WL 4641265, at *1 (Miss. Ct. App. Oct. 17, 2017). The Court of Appeals held that the trial court properly had ruled on Brown's claims and affirmed its ruling.[1]  The court first found issues (2), (4), and (5) to have been "well settled, and [that] their discussion and application to the facts of this case would not add value to the jurisprudence of this state." *Id.* at *2. (citing *Gen. Motors Corp. v. Jackson*, 636 So. 2d 310,

---

[1] Griffis, P.J., Carlton, Fair and Greenlee, JJ., concur. Westbrooks, J., dissents with separate written opinion, joined by Lee, C.J., Irving, P.J., and Barnes, J. Tindell, J., Not Participating.

4

311 (Miss. 1992)).  The court analyzed only issues (1) and (3) and discussed only the photograph of a chair in the doorway of the grill and the admissibility of testimony by Dr. Bain–"an expert witness in the field of biomechanics." *Id.* at \*5.  Finding that the circuit court appropriately had allowed the jury to consider both the photograph and Dr. Bain's testimony, the Court of Appeals affirmed the circuit court's verdict, noting that "[t]he jurors were capable of considering the photo and the uncomplicated testimony . . . without being confused or misled." *Id.* at \*5.

¶10.   Aggrieved, Brown petitioned this Court for a writ *certiorari*. We granted *certiorari* to review whether the trial court erred in overruling Brown's objection to certain photographic  evidence and expert testimony submitted by the defense.

## DISCUSSION

### I.   Whether the trial court abused its discretion by allowing Exhibit 29 into evidence.

¶11.   Before trial, Brown filed a motion *in limine* to exclude several pieces of evidence. Now before this Court is Exhibit 29: a photograph taken by defense counsel several years after the incident in an attempt to recreate the scene of the incident. The photograph was one of many photographs admitted into evidence by the defense to show the jury what the grill and doorway looked like. Unlike the other photographs, Exhibit 29 depicted a chair in the doorway which supported Brown's description of the scene on the night of the incident.

¶12.   Exhibit 29's recreation was based on a July 2014 statement that Brown had made to his insurer with his counsel present, but later testimony conflicted with portions of the

5

statement. The picture depicts a chair, similar to the one over which Brown claims he tripped, positioned in the doorway of the grill.  Both Brown and PBS agreed that the chair should have been rotated 180 degrees from its position in the photograph. Brown also argued that the chair should have been positioned in a different location in the doorway, but testimony about the chair's exact placement in the doorway changed several times throughout the proceeding. At one point, Brown admitted that he did not see the chair at all prior to hitting it.

¶13.    As reiterated by the Court of Appeals, the standard of review for the trial court's admission and exclusion of evidence is abuse of discretion. *Id.* at \*4 (citing *Tunica Cty. v. Matthews*, 926 So. 2d 209 (Miss. 2006)).  This Court has "long held that the admissibility of photographs is within the sound discretion of the trial court and that the trial judge has wide latitude and discretion." *Id*. (quoting *Nelson v. Phoenix of Hartford Ins.*, 318 So. 2d 839, 843 (Miss. 1975).

### *A.       The Evidentiary Standard for a Recreation Photograph*

¶14.    Applying the analysis in *Beasley v. State*, the Court of Appeals concluded that "some probative value is the only requirement needed to support a trial judge's decision to admit photographs into evidence." *Beasley v. State*, 136 So. 3d 393, 401 (Miss. 2014). The court determined that the *Beasley* holding was directly applicable in that "the photo was consistent with and fairly depicted Brown's recorded statement," with minor "differences in the angle and positioning of the chair" which "could be 'carefully pointed out to the jury.'" *Brown*,

2017 WL 4641265, at *4 (citations omitted). However, the photographs in **Beasley** do not convey a scene and circumstances similar to the photograph presented in this case. In **Beasley**, the photographs at issue depicted a "crime-scene and autopsy" and were taken soon after the incident. *Id.* at 399. There, the Court had been charged with determining "whether to admit particularly graphic photographs into evidence"—not whether an innocuous picture of a chair, taken years after the incident, was admissible. *Id.* at 400. While some of its principles could apply loosely to the matter before us, the holding of **Beasley** is not directly on point to the issue before us.

¶15. Instead, **Gulf, Mobile & Ohio Railroad v. Golden** offers a more applicable evidentiary standard for photographic recreations. **Golden** dealt with photographs of the site where a train accident had occurred hours earlier. Photographs of the actual accident were not present in the record. **Gulf, Mobile & Ohio R.R. v. Golden**, 72 So. 2d 446, 450 (Miss. 1954). In determining the admissibility of photographs of this nature, the **Golden** Court held:

> The mere fact that a photograph was taken at a time different from that in question does not render it inadmissible if the witness is able to verify it as a *substantial representation* of the conditions as they existed at the time in question. Nor does the fact that the conditions were somewhat changed before the photograph was taken [render] the photograph inadmissible if the changes were not material, and if the changes are carefully pointed out and brought to the jury's attention.

*Id.* (emphasis added). S*ee also* **Nelson v. Phoenix of Hartford Ins.**, 318 So. 2d 839, 843 (Miss. 1975) (coming to a similar conclusion on the evidentiary standard for photographs of a building destroyed by a hurricane).

¶16. Brown was the only witness to his accident, but it was not an abuse of discretion to find Brown's testimony to have been a fair basis for the admission of the photographs. Although inconsistencies in Brown's statements existed regarding several specific aspects of the photographs, the general premise of the incident remained consistent: late at night, he walked into a chair sitting in the middle of the doorway. Therefore, this Court must determine whether (1) the photographic recreation is a substantial representation of the conditions as they existed at the time in question, and (2) whether the changes carefully were pointed out and brought to the jury's attention.

¶17. Both parties agree that the chair should have been rotated 180 degrees from what was shown in Exhibit 29 and that there is contradictory evidence regarding where the chair should have been placed in the doorway. Neither of these issues is material, and the photograph stands as a substantial representation of the alleged accident. Moreover, both issues were pointed out to the jury. Whether the chair was a few inches one way or the other, and whether Brown hit the left or right arm of the chair, is inconsequential.

¶18. For the first time, Brown argues in his appellate brief that the lighting of Exhibit 29 was inaccurate. He argues that the picture was taken during the day but the incident happened at night, and therefore the photograph was an inaccurate recreation of the incident. Brown argues that his motion *in limine* challenged the "relevance, authenticity, and accuracy" of the photograph, which preserved the lighting issue for review. We find this broad language was insufficient to preserve the issue for review.

¶19.    During argument on the motion *in limine* and the subsequent trial objection, the parties focused on the placement of the chair, the angle of the chair, and the "advantageous" angle of the photograph; but there was never any discussion of the lighting of Exhibit 29. Brown made clear, specific objections about the misplaced chair in the photograph, but he never made specific objections about the lighting inaccuracies. As we previously have held, objections "on one or more specific grounds constitutes a waiver of all other grounds." **Smith v. State**, 986 So. 2d 290, 290 (Miss. 2008) (quotation marks omitted).

¶20.    In an even broader context, discussions regarding the inaccuracies of Exhibit 29 throughout the record focus *exclusively* on the chair. While there were several occasions where Brown discussed the lighting of the grill in reference to other photographs that recreated the accident, he never addressed lighting or it discrepancies during discussions of Exhibit 29. These discussions about the lighting in other photographs show that Brown was aware that the photographs taken by defense counsel had been brightly lit and that they had been inconsistent with alleged lighting at the time of the incident. But he never raised this point in a discussion about Exhibit 29, nor did he ever suggest that he took issue with this inaccuracy.

¶21.    Objecting to the "relevance, authenticity, and accuracy" of the photograph was not a sufficient indication that the judge should have taken into account the photograph's lighting when considering whether it was a substantial representation of the scene it was meant to portray. Without more, the judge could not reasonably have known that lighting was an issue

during the trial process. Therefore, the lighting inaccuracy was not preserved, and it is procedurally barred on appeal.

¶22. With this bar, the only issues before this Court concerning the photograph are Brown's claims of an erroneous camera angle and placement of the chair. Despite those inaccuracies, the photograph was a substantial representation of the incident and its inaccuracies were explained to the jury. As a result, we find that the court did not abuse its discretion in admitting Exhibit 29 into evidence.

### B. The Court Order on Exhibit 29

¶23. In his order responding to Brown's motion *in limine* to exclude Exhibit 29 from evidence, the trial judge acknowledged that the scene of the incident was no longer accessible. With that in mind, he held that "the Court will permit the Defendant to offer one photo including the slight chair placement inaccuracy, but the inaccuracy shall be explained to the jury, either through witness testimony or through an agreed stipulation, so as to avoid any confusion to the jury." The trial court later allowed the photograph to be shown to the jury during defense counsel's opening argument.

¶24. The trial court provided two avenues for the photograph's admission as evidence, allowing it to be explained to the jury through either witness testimony or agreed stipulation. The parties did not stipulate to an explanation, so clarification via witness testimony was the only avenue by which the evidence could be admitted. The Court of Appeals' dissent argued that the defense's "brief explanation of the recreated picture to the jury [during open

argument] does not comport to the trial judge's order regarding the admissibility of the photo." While this is accurate, the dissent overlooked Brown's witness testimony that served to explain the inaccuracies to the jury. The defense's cross-examination of Brown clearly addresses the two core inaccuracies, as discussed in the above section of this opinion:

> Q. All right. So tell me, other than the chair being turned the wrong way, is the chair located where it was on September 28, 2012, around 8:00, 8:15, 8:30?
>
> A. No it's not.
>
> . . .
>
> Q. Okay. So tell me where the chair was.
>
> A. The arm was turned – the arm to the chair was turned towards the bar.
>
> Q. Okay.
>
> A. And it was closer to the door. The back padding of the chair was on the door – closer to the door.

¶25. Notably, Brown offered statements throughout discovery that conflicted with this testimony, stating specifically that he did not see the chair prior to hitting it. However, the court's order required only that the photograph's inaccuracy be "explained"; it did not require the explanation to be consistent with all other testimony. Furthermore, although Brown's explanation of the inaccuracies in the photograph occurred after the photograph was used by the defense, the order did not specify that the explanation of the inaccuracies needed to be done before it was admitted. It simply stated that "the inaccuracy shall be explained to the jury." We find that admission of the photograph into evidence complied with the trial court's

11

order on the motion *in limine*.

> **II.** **Whether the trial court abused its discretion by finding Dr. Bain's testimony admissible**.

¶26. PBS called Dr. Charles Bain to testify as an expert witness about the biomechanics of Brown's alleged chair collision. Dr. Bain received his undergraduate degree in nuclear engineering from the Royal Military College of Canada and his medical degree from Queen's University of Canada. After medical school, he practiced family and emergency medicine in Canada for nineteen years. Over the thirteen years leading up to trial, he worked as a consultant and expert witness for Biodynamic Research Corporation. He also coauthored six published articles in biodynamics and was an adjunct professor at the United States Air Force School of Aerospace Medicine, where he taught flight surgeons about injury mechanisms.

¶27. Dr. Bain was brought in by the defense to conduct an "injury causation analysis," which analyzed the likelihood that the alleged impact with the chair caused the bilateral patellar tendon ruptures. Dr. Bain did not do any simulations specifically tethered to the facts of this case and instead, discussed studies outlining the type and severity of incidents that typically result in a bilateral patellar tendon rupture. Dr. Bain compared those findings to Brown's alleged accident.

¶28. Dr. Bain testified that walking into and falling over a chair is inconsistent with causes the patellar of tendon rupture. He testified that motion such as "running vigorously," then suddenly stopping, is a common cause of a patellar tendon rupture in an "essentially healthy tendon." He also noted that activities like weightlifting also can create enough force to

12

rupture the tendon. He concluded that it was "highly unlikely" that Brown's injury had been

caused by his falling over a chair.

¶29.    The admissibility of expert testimony is governed by Mississippi Rule of Evidence

702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Miss. R. Evid. 702. *See also **Daubert v. Merrell Dow Pharm. Inc.***, 509 U.S. 579, 592, 113

S. Ct. 2786, 125 L. Ed. 2d 469 n.10 (1993).

¶30.    Here, the parties do not dispute that Dr. Bain's qualifications and specialized

knowledge rendered his testimony admissible in this case.  Rather, Brown takes issue with

whether Dr. Bain's testimony was based on sufficient facts or data and whether the testimony

was the product of reliable principles and methods. "When reviewing a trial court's decision

to allow or disallow evidence, including expert testimony, we apply an abuse of discretion

standard." ***Illinois Cent. R.R. Co. v. Brent***, 133 So. 3d 760, 779 (Miss. 2007). "Unless this

Court concludes that a trial court's decision to admit or exclude evidence was arbitrary and

clearly erroneous, that decision will stand." ***Id***.  We find no error in allowing Dr. Bain's

13

testimony.

¶31.    Brown argued that Dr. Bain's conclusions were "sheer conjecture." Throughout trial and the subsequent appellate briefs, Brown attacked the sources that Dr. Bain used—primarily consisting of orthopedic journals—as insufficient to reach his conclusions. He also argued that Dr. Bain never conducted any tests or simulations about whether walking into a chair could result in a bilateral patellar tendon rupture. However, Brown did not object to Dr. Bain's testimony until the end of the third day of trial, so the record provides very little guidance on these claims. Responding to Brown's late objection, the trial court noted:

> The plaintiff has been on notice for nearly five months of Dr. Bain's qualifications, opinions and methodology used in forming those opinions, which even included a multipage document detailing the other cases where he has provided expert testimony. Despite the notice, the plaintiff raised for the first time an objection concerning Dr. Bain yesterday.

Nothing in the record confirms that Dr. Bain's sources were sufficient to back his claims, but the record also does not provide enough evidence to suggest that the sources were lacking a scientific basis. With no other information available in the record, we rely upon the testimony that these articles came from "orthopedic journals." Such testimony is, at face value, consistent with other articles about the forces that might cause a bilateral patellar tendon rupture. Finding no contradictory evidence presented to suggest that these articles lacked a scientific basis, there is nothing to *clearly* prove that the trial court erred in finding that Dr. Bain's testimony was based on sufficient facts and was the product of reliable principles and methods.

14

¶32. While the strength of Dr. Bain's sources is unclear, the record indicates that Dr. Bain reliably applied the principles and methods to the facts of the case. His conclusions were not "sheer conjecture." His testimony first described the sorts of injuries that normally cause a bilateral patellar tendon rupture and clarified that such an injury requires a powerful force for it to occur. Then, he turned to Brown's collision with the chair and explained that the type and caliber of force in that collision were inconsistent with the causes of a tendon rupture, making it "highly unlikely" that Brown's injury had been caused by his falling over a chair.

¶33. Brown's final argument under this issue is that Dr. Bain failed to conduct any simulations or visit the scene of Brown's alleged accident to take measurements. Brown claims that such testing was necessary in this case because he "flipped" over the chair, making this more than just a simple fall. But Dr. Bain's testimony focused largely on the finding that Brown's accident did not involve the type of impact that would cause a bilateral patellar tendon rupture and that hitting the chair would not have created enough force to cause the injury. Brown provides no reasonable explanation regarding why his having flipped over the chair would necessitate a simulation. Therefore, the trial court did not abuse its discretion on this ground either.

¶34. With nothing in the record indicating that Dr. Bain's testimony deviated from the requirements of Mississippi Rule of Evidence 702, or that a simulation of the incident was necessary in this case, Brown failed to support his objections to the admission of Dr. Bain's testimony. Accordingly, the trial court did not abuse its discretion in admitting the evidence.

15

## CONCLUSION

¶35. We hold that the Court of Appeals properly affirmed the circuit court's decision to allow the jury to consider the photograph marked as Exhibit 29 and Dr. Bain's expert testimony in its deliberations. Finding that the trial court did not abuse its discretion, we affirm the judgments of the Hinds County Circuit Court and the Court of Appeals.

¶36. **AFFIRMED**.

**WALLER, C.J., RANDOLPH, P.J., COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, JUSTICE, DISSENTING:**

¶37. Because defense counsel was allowed to introduce an inaccurate and irrelevant staged photograph of the scene of the incident and because Brown sufficiently objected to the inaccuracies of the photograph, I respectfully dissent from the majority's conclusion that the trial court did not abuse its discretion in allowing the recreated photograph into evidence.

¶38. Brown's complaint alleged that employees of Professional Business Services (PBS) failed to place chairs in their proper positions under the tables and turned off the lights in the grill room, creating a dangerous condition that caused Brown to suffer physical harm. Thus, the lighting in the grill room, the visibility of the chair, and the position of the chair were major points of contention in Brown's case. However, several years after the incident occurred, counsel for defense staged the inside of the doorway and took photographs of the chair during daylight hours and from an optimum angle.

16

¶39. Although the majority finds that Brown failed to object that the lighting in the recreation photograph was inaccurate, I disagree. Counsel for Brown filed a motion in limine to exclude any attempt to publish photographs to the jury of the accident scene that had been taken by defense counsel as an alleged recreation of the accident scene. In the motion, Brown argued that the angles and positioning of the room and the chair were not accurate and that the scene had been photographed deliberately to favor PBS. At the hearing on the matter, Brown argued that the recreation photographs should be excluded because: 1) the pictures were taken by defense counsel; and 2) the photographs were not accurate and did not recreate the accident scene as it existed. Brown pointed out that the scene in the photographs had been staged to obtain an advantage demonstrated by the direction the chair had been turned and how the chair appear from the angle in the hallway. Defense counsel admitted that the chair had been turned the wrong way. Brown's counsel then stated:

> It's a picture, so it's significant, you know. There's some cliche about what a picture is worth compared to our ability to explain that it's wrong. To his credit counsel admits that he made a mistake and it's not even positioned correctly, according to what we understand. So now they're contemplating showing a picture to the jury for them to look at, that shows something that's not accurate. And we're not sure why it's relevant anyway. We're not sure why they need it. It's certainly nothing that their experts have hinged any sort of opinion on or anything else. So I'm not certain why it's so crucial to bring it in. But if they contend it is, it at leas[t] has to be an accurate representation.

¶40. During opening statement, Brown's attorney again objected to the photograph, stating: "He's using one picture that vividly is not an accurate representation." The trial court overruled the objection. Defense counsel then was allowed to state to the jury: "I went to

17

Colonial but the club had been closed at that point. And I put a chair right in the doorway. And that's the chair (indicating). Now, I messed up. The chair should – you see how it's facing right? It should be facing the left. And that's on me. But *the only difference is the chair should be rotated 180 degrees and facing left instead of facing right*. . . . And I submit to you, because anyone as they walk down the hallway, if there's a chair right in the doorway like that, you can see it. You're not going to trip over that chair." After Brown's testimony, Brown's counsel once more renewed the objection to the recreated photograph. Counsel for Brown contended that the chair was incorrectly placed and that the jury had sat through an entire cross-examination "having that image in their brain of a chair in a doorway that they're going to in closing argue the [plaintiff] should have seen, when it's just a fabrication. . . ."

¶41.    I believe that Brown's repeated objections regarding the accuracy of the photograph encompassed all issues that were not accurately portrayed, including the lighting in the grill room and during daylight hours. Counsel for Brown repeatedly objected that the photograph inaccurately portrayed the scene at the time of the incident. Brown also argued that the photograph was irrelevant and unauthentic. This language was broad enough to encompass the entirety of the inaccuracies of the photograph, including the lighting. Because the photograph was taken in daylight with the lights in the grill room on, because the photograph was taken at an inaccurate angle to show maximum visibility of the chair in the doorway, and because the photograph incorrectly portrayed the position of the chair, I believe the trial court abused its discretion in allowing the photograph to be introduced into evidence.

18

¶42. This Court, in *Gulf, Mobile & Ohio Railroad Company v. Golden*, 72 So. 2d 446, 450 (Miss. 1954), stated that the rule for photographs is that:

> "Before a photograph may be admitted into evidence, it must be shown by extrinsic evidence to be a true and faithful representation of the place or subject it purports to represent as it existed at a time pertinent to the inquiry." 32 C.J.S., *Evidence*, § 715, page 620. The material inquiry is whether or not the photograph is a fair and accurate reproduction and representation of conditions as they existed at the time of the collision involved.

The Court continued that "the mere fact that a photograph was taken at a time different from that in question does not render it inadmissible *if the witness is able to verify it as a substantial representation of the conditions as they existed at the time in question.*" *Id.* (emphasis added).

¶43. In *Givens v. State*, 618 So. 2d 1313, 1318 (Miss. 1993), this Court again affirmed the trial court's decision to refuse to admit photographs in evidence because the photographs "had great potential for confusing the jury as to the conditions which actually existed on the night in question." The defendant in that case had been arrested at night for tossing a plastic bag of crack cocaine from his pocket to the ground while a police officer had been shining his "stream light" on the defendant. *Id.* at 1315. The eight-month time lapse between the arrest and the photographs being taken did not concern the Court. *Id.* at 1318. Instead, the witness testimony showed that the conditions in the photographs were not substantially similar to the conditions on the night of the arrest. *Id.* The photographs taken by the defense failed to show a "stream light" flashlight on the defendant and failed to show the exact location where the defendant had been standing. *Id.* at 1316. Thus, the Court noted that the

photographs had the potential to confuse the jury. *Id.* at 1317.

¶44.    As in ***Givens***, the differences in the witness testimony of the incident and the staged photograph had the potential for confusing and prejudicing the jury. Rule 403 of the Mississippi Rules of Evidence states that the trial court may exclude evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice [or] misleading the jury." Here, the photograph was taken during daylight hours with full overhead lighting in the grill room and was taken from an extreme angle designed to show maximum visibility of the chair in the doorway. Brown testified that he had been walking along the right-hand side of the wall when he turned right and tripped over the chair. However, defense counsel took a photograph of the chair from the opposite side of the wall, making the chair clearly visible in the picture. The defendant also was allowed to publish the inaccurate photograph to the jury in opening argument, without a foundation, and without a sponsoring witness. In addition, defense counsel was allowed to say during opening statement that, "if there is a chair right in the doorway like that, you can see it. You are not going to trip over that chair." I would find that any probative value of the introduction of the photograph was substantially outweighed by a danger of unfair prejudice and of misleading the jury.

¶45.    Moreover, I believe that the staged photograph was irrelevant and thus inadmissible pursuant to Mississippi Rule of Evidence 402. Rule 402 states that "irrelevant evidence is not admissible." M.R.E. 402. Defense counsel had taken several photographs of the grill room,

the hallway leading to the grill room, and the doorway, making the introduction of the staged photograph of the chair into evidence unnecessary. PBS could have argued its case sufficiently by introducing the nonprejudicial photographs of the chair, grill room, and doorway.

¶46.    Brown's case rested on the contention that a combination of the misplaced chair, in addition to the darkened room, created a dangerous condition that caused Brown to suffer injuries. Brown repeatedly objected to the recreated photograph, arguing that it "sets a staged scene and is not an accurate depiction of the incident scene." I believe that Brown's objections to the inaccuracy of the photograph sufficiently encompassed the lighting issue for review. Therefore, I would find that the trial court abused its discretion in allowing the introduction of a staged photograph of the chair in the doorway from an advantageous angle, in daylight, and with the lights on in the grill room, would reverse the trial court's decision, and the decision of the Court of Appeals and would remand this case for a new trial.

**KITCHENS, P.J., JOINS THIS OPINION.**